Joe **BENAVIDEZ**, Defendant–Appellant,

v.

The **PEOPLE** of the State of Colorado, Plaintiff–Appellee.

No. 99SA160.

Supreme Court of Colorado, En Banc.

Oct. 4, 1999.

Rehearing Denied Nov. 1, 1999.

The Law Firm of Douglas S. Joffe, Douglas S. Joffe,Theodore B. Peak, Denver, Colorado, Attorneys for Defendant–Appellant.

Ken Salazar, Attorney General, John Daniel Dailey, Assistant Solicitor General, Cynthia A. Greenfield, Assistant Attorney General, Appellate Division Denver, Colorado, Attorneys for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Kathleen A. Lord, Chief Appellate Deputy, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, Attorneys for Amicus Curiae for the Defendant–Appellant.

Justice MARTINEZ delivered the Opinion of the Court.

This is the second of two decisions in which we consider the relationship between the plea agreement, the advisement, and the mandatory parole requirement set forth in section 18–1–105(1)(a)(V)(A), 6 C.R.S. (1998). In this case, Joe Benavidez seeks relief from a series of convictions and sentences entered by the Weld County District Court pursuant to negotiated plea agreements. Applying the analysis we announce today in *Craig v. People*, 986 P.2d 951 (Colo.1999), we conclude that Benavidez is not entitled to relief. Specifically, we reject his claim that the government made promises altering the application of mandatory parole in his case, and we find that he was sufficiently advised of the mandatory parole requirement to enter his plea with the requisite knowledge of the consequences. Accordingly, the post-conviction district court properly denied relief.

I.

Benavidez's pleas arose out of a series of arrests occasioned by his substance abuse. Before we more fully describe the plea documents and providency hearings, we find it useful to provide an overview of the progression of these cases and the resulting dispositions.

The first case, number 96CR163, was initiated after officers arrested Benavidez for possession of a controlled substance. Pursuant to a plea agreement, Benavidez pleaded guilty, while the People dismissed two additional cases that had been brought against Benavidez due to separate criminal episodes. In addition, the People recommended sentencing to Intensive Supervised Probation, and Benavidez agreed to get inpatient help with his drug addiction.

Shortly thereafter, Benavidez violated the terms of his probation. He also committed new crimes, including multiple thefts and felony menacing. Plea dispositions were negotiated for two new cases, numbers 96CR943 and 96CR1135, as well as the probation violation. This time, Benavidez agreed to spend thirty days in Weld County Jail and to admit he violated probation in 96CR163. The people agreed to dismiss a separate pending case against Benavidez, and to recommend sentencing to a community corrections program in both 96CR943 and 96CR1135. Sentencing was postponed, however, due to concerns regarding the availability of space in the community corrections program.

Before sentencing could take place, Benavidez once again committed new, more serious, crimes. Two additional cases, numbers 97CR887 and 97CR905, were brought after episodes in which Benavidez broke into private dwellings in search of drug money, threatening the occupants of the dwellings in the process. Because sentencing in cases

96CR943 and 96CR1135, and re-sentencing for the probation violation in 96CR163, had not yet taken place, the parties agreed to a plea agreement that would dispose of all five cases then pending against Benavidez. Pursuant to this agreement, Benavidez would plead guilty in both of the newest cases and acknowledge a violation of probation in the earlier matters. In return, the People would (1) recommend a five year "cap" to any sentence of confinement to the Department of Corrections; (2) recommend that all sentences be run concurrently; and (3) express a preference for getting Benavidez into a community corrections center to address his substance abuse in lieu of prison time, provided, however, that the community corrections center accepted Benavidez into the program.

The pleas were accepted by the trial court, but the participants were informed at a subsequent sentencing hearing that Community Corrections would not admit Benavidez. As a result, and pursuant to the agreed maximum on imprisonment time, the trial court sentenced Benavidez to five years in the Department of Corrections in each of the cases, with the exception of case 96CR943 where a three year period of imprisonment was imposed. All sentences were ordered to run concurrently, and Benavidez was given credit for time already served.

In connection with each of the pleas described above, Benavidez and his attorney completed a "WRITTEN WAIVER AND GUILTY PLEA FORM." By signing the waiver forms, Benavidez acknowledged that he had gone over the matters with his attorney; that he believed the District Attorney had sufficient evidence to convict; that he understood the rights associated with trial and wished to waive those rights; [1] and that he had read and understood both the list of elements that would have to be proven beyond a reasonable doubt at a trial, and the list of penalties associated with the charges in question. Defense counsel also signed the form, certifying that the matters contained therein had been explained to Benavidez and

that, in the opinion of counsel, Benavidez understood "his rights, the charge or charges to which he [was] pleading guilty, and the possible penalties."

Attached to each waiver form (and incorporated by reference) was an additional document tailored to the particulars of each case, explaining in detail (1) the elements of the specific charges to which Benavidez was proposing to enter a guilty plea; (2) the type and range of penalties associated with the crimes in question; and (3) the matters on which the parties had reached an agreement. For cases 96CR163, 96CR943, and 96CR947, the advisement of penalties included a notation that "[a]ll sentences to the Department of Corrections may include 1 year mandatory and up to 5 years of parole." The forms for cases 97CR887 and 97CR905 indicated that "[a]ll sentences to the Department of Corrections shall include a mandatory parole period of 5 years." In each case, the description of penalties also indicated the applicable sentencing range for sentences to confinement in the Department of Corrections (including the adjusted periods that would apply in case of aggravating or mitigating circumstances), as well as the potentially applicable fines associated with each offense.

At each of the providency hearings associated with these matters, the trial court conducted a Crim. P. 11 advisement. The court's practice was to ensure that Benavidez had a copy of the plea documents in front of him, and then to review those documents and question Benavidez regarding his understanding of the same. The advisement conducted at the final providency hearing (with regard to cases 97CR887 and 97CR905) is illustrative:

THE COURT: The first page in each case explains your rights, is signed by you and [defense counsel]. They're identical in both cases. Did you go over these with your lawyer?

THE DEFENDANT: Yes, I did, Your Honor.

---

1. The waiver form specifically described the right to remain silent, the right to counsel at trial, the right to plead not guilty, the right to an appeal, the right to a jury, the right to confronta-

tion of witnesses, the right to the presumption of innocence, and the right to testify or not testify at his option.

THE COURT: Do you understand those rights?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand you are giving them up by pleading guilty today? You are giving up the right to trial?

THE DEFENDANT: Yes, I understand, sir.

THE COURT: Are there any of these rights you would like me to explain more fully at this time?

THE DEFENDANT: No, sir.

THE COURT: Second page of each form begins with the explanation of the elements of the charges to which you have pled. These elements are the things that the district attorney would have to prove if you pled not guilty and went to trial. In each case, the elements are identical, except for the date and the name of the victim and the reasons for entering the residence. Do you understand the elements of each crime?

THE DEFENDANT: Yes, sir.

THE COURT: Do you wish me to explain any of the elements in either of these two offenses more thoroughly at this time?

THE DEFENDANT: No, Your Honor, I understand.

THE COURT: Second paragraph of each advisement form explains the penalties that could have been imposed if you had been found guilty at trial. Do you understand what you were facing up until this afternoon?

THE DEFENDANT: Yes.

THE COURT: And, finally, the plea agreement in each case indicates that, first, in 97CR905, Count 2 will be dismissed in return for your plea and you will receive a cap of five years to the Department of Corrections. I would assume that's a cap of five years to Community Corrections if he's sentenced there as well. And in 97CR887, it indicates that Count 1 will be dismissed and, again, a cap of five years to the Department of Corrections. Both cases to run concurrently with another and concurrently with the sentences in each of the 96 cases. Is that what your understanding is?

THE DEFENDANT: Yes, sir.

THE COURT: So, basically, you are getting a maximum of five years for five cases and all of the other charges are dismissed; is that your understanding?

THE DEFENDANT: That's my understanding, yes.

THE COURT: Other than what we have talked about, have any other promises been made to you about this?

THE DEFENDANT: No.

Significantly, neither Benavidez nor his counsel ever sought further explanation of the matters discussed in the advisement. After confirming that there was a factual basis for the charges in question, the court indicated it would accept the pleas.

Following sentencing, Benavidez was transported to a Department of Corrections facility. He subsequently filed a Crim. P. 35(c) motion challenging the validity of his sentence. The motion, which is not included in the record before us, was denied by the post-conviction court. Benavidez initiated an appeal, and we accepted transfer of the case pursuant to section 13–4–109, 5 C.R.S. (1998) and C.A.R. 50(b) following briefing in the court of appeals but prior to a decision by that body. We now hold that relief was properly denied by the post-conviction district court.

II.

In *Craig v. People,* 986 P.2d at 957 (Colo.1999), also announced today, we noted that cases involving post-conviction challenges to mandatory parole require examination of two considerations related to the requirement that pleas be knowingly, voluntarily, and intelligently entered. The first question is whether the defendant was promised, as a material inducement to his plea, a sentence related to mandatory parole that was statutorily prohibited. If so, the plea cannot stand in light of this illegal inducement and may be withdrawn. The second question is whether the defendant was properly advised of mandatory parole and its length. If the advisement was improper in this respect, the defendant should be giv-

en the opportunity to withdraw the plea, unless the infirmity is harmless or is rendered harmless. The error is harmless if the prison sentence imposed and the mandatory parole term, combined, do not exceed the prison time the defendant was advised of and risked receiving. The error can be rendered harmless by substituting a legal prison sentence so that the substituted prison sentence and the parole term, combined, do not exceed the prison time the defendant was advised of and risked receiving.

Benavidez makes arguments raising both of these questions in the instant case. We address each area in turn.

### A.

▪ Benavidez argues that requiring him to serve five years confinement in the department of corrections, plus the additional five year mandatory parole period required by section 18–1–105(1)(a)(V)(A),[2] results in a breach of his plea agreement. Thus, Benavidez asserts that his plea agreement contains a promise contrary to the ordinary application of mandatory parole. As we noted in *Craig*, our holding in *Chae v. People*, 780 P.2d 481, 486 (Colo.1989), precludes the courts from enforcing a plea agreement that contains such an improper inducement. See 986 P.2d at 959. We therefore construe Benavidez's breach argument as raising a *Chae* issue, and we look to the agreements in question for evidence of an improper inducement.

▪ The interpretation of a plea agreement is strictly a question of law. See *id.* at 960; *St. James v. People*, 948 P.2d 1028, 1030 (Colo.1997). This inquiry requires us to ascertain both the existence and scope of the promise being claimed by a defendant. See *Craig*, 986 P.2d at 960; *People v. Romero*, 745 P.2d 1003, 1010 (Colo.1987). In testing the validity of any particular view of the parties' bargain, we look to an objective test measuring whether the interpretation being proposed comports with the "meaning a reasonable person would have attached under the circumstances." *Craig*, 986 P.2d at 961. And, because constitutional due process concerns are implicated, we look not only to the written instruments associated with the agreement, but also to extrinsic evidence in the form of oral statements and the "circumstances of the government's dealings with the defendant." *Romero*, 745 P.2d at 1010. Where the parties' agreement is unambiguous, we will not treat a potentially unclear advisement by the trial court as altering the terms of the bargain unless the court can be understood to have made a clear promise inconsistent with the unambiguous bargain, and the parties acquiesce in the court's modification. *Craig*, at 961; *People v. Wilbur*, 890 P.2d 113, 118–19 (Colo.1995).

▪ The mere absence of an explicit reference to mandatory parole in written or oral descriptions of the plea agreement does not require us to construe the parties' bargain as eliminating or modifying the application of this statutory requirement. See *Craig*, 986 P.2d at 961. To the contrary, "[i]n the absence of express language by the parties indicating that they have actually agreed to eliminate or circumvent the parole requirement, we will construe the plea agreement as envisioning a legal sentence." *Id.* at 961.

▪ Further, where the parties speak in terms of a sentence to the "Department of Corrections" or the "D.O.C.," we will treat that sentence concession as concerning itself only with the confinement component of the sentence. See *id.* at 962. Thus, a plea agreement calling for a sentence of "five years, D.O.C." should be understood as envisioning a sentence that consists of both a five year term in a Department of Corrections facility, *and* any additional period of mandatory parole demanded by section 18–1–105(1)(a)(V)(A). See *id.*

For purposes of this appeal, the "plea agreement" with which we are concerned is the final arrangement involving disposition of

---

2. Benavidez's sentences to imprisonment in cases 97CR887 and 97CR905 were for class three felonies. As such, Benavidez is subject to the maximum five-year mandatory parole period. See § 18–1–105(1)(a)(V)(A).

Benavidez's new charges in 97CR887 and 97CR905, as well as the theretofore unresolved sentencing and re-sentencing issues from all three earlier cases. Guided by the above principles, our review of the record reveals no evidence of an illegal inducement in the form of a governmental promise to modify or eliminate mandatory parole.

Benavidez asserts, however, that his agreement was for a "cap" of five years, and the court told him he would be subject to a "maximum of five years for five cases." He claims that he was therefore promised that his liberty would be impacted for no more than five years by any form of punishment. Since the mandatory parole period is itself five years, Benavidez claims he was entitled to be released directly to parole following sentencing. As we noted in *Craig*, because a court may not enter a sentence of that sort, it is not a statutorily available sentence concession. *See* 986 P.2d at 962. And as in *Craig*, we do not find that the trial court promised to enter such a sentence here.

We note that the trial court's advisement in this case did add a term to the parties' agreement. Although the parties had informed the court of a preference for sentencing to Community Corrections, if it was available, they did not specify the maximum term of such a sentence. During its advisement, the trial court said that it would apply the length of the agreed five year maximum term to the Department of Corrections to any sentence to Community Corrections. The parties acquiesced and this promise became a part of Benavidez's plea agreement.

However, the trial court did not promise Benavidez that mandatory parole would not apply to his case, or that he would face only five years of any type of penal exposure. The court's statement that Benavidez was getting "five years for five cases," clearly speaks in terms of the five year limitations the court had described in terms of the parties' sentence concessions on imprisonment

time and Community Corrections. The sentencing consequences not covered by those particular concessions remained applicable.

Benavidez notes that his plea documents used the phrase "[a]ll sentences to the Department of Corrections shall include a mandatory parole period of 5 years." He claims that use of the word "include" indicates that his plea agreement provided for all mandatory parole time to be subsumed by (and therefore to replace) the sentence to five years in the Department of Corrections indicated by the parties and approved by the trial court. We reject this interpretation. In our view, a reasonable person would understand the phrase in question as indicating that any sentence having a Department of Corrections component would also be subject to a mandatory parole component. *See id.* Further, in the context of this record, no reasonable person would understand the bargain as placing Benavidez directly onto parole. The advisement form clearly indicated that a Department of Corrections sentence was a sentence to *confinement.*[3] The parties treated their bargain as involving confinement, referring to the sentence as "in," "at" and "to" the D.O.C. There is simply no indication in the record that the parties anticipated Benavidez being sent directly to parole without serving a day either in prison or Community Corrections.[4]

Thus, Benavidez received no promises constituting an inappropriate inducement to plead guilty from either the prosecutor or the trial court. Accordingly, we hold that he is not entitled to relief under the rule from *Chae.*

### B.

■ As we held in *Craig*, the fact that the parties' plea agreement cannot be properly interpreted to eliminate or alter the application of mandatory parole is separate from the inquiry as to whether the defendant was sufficiently well advised of the mandatory

---

3. For example, in cases 97CR887 and 97CR905, the possible penalties included a reference to "4 to 12 years *confinement* with the Colorado Department of Corrections."

4. In fact, a sentence to zero years imprisonment and five years of parole is not cognizable under the sentencing provisions located in section 18–1–105(1)(a)(V)(A). Accordingly it was also statutorily unavailable.

parole requirement so as to enter a plea with sufficient knowledge of the consequences. *See id.* at 963, 1999 WL 782059; *People v. Birdsong,* 958 P.2d 1124, 1128 (Colo.1998).

Mandatory parole is a direct consequence of a guilty plea, and a defendant must therefore be advised (1) that the parole required is after, in addition to, or distinct from any period of imprisonment, and (2) of the length of mandatory parole, although the failure to so advise may be harmless error. *See Craig,* 986 P.2d at 963. However, as with all of our cases in this realm, we do not require that the advisement on this topic be conducted in accordance with any prescribed ritual or script. *See People v. Cushon,* 650 P.2d 527, 528 (Colo.1982). The proper inquiry is whether the "record as a whole" shows that the defendant was given sufficient information as to fairly be put on notice of the matter in question. *Craig,* 986 P.2d at 963; *People v. District Court,* 868 P.2d 400, 403 (Colo.1994). Where a defendant has affirmatively indicated her understanding of a matter on the record, the reviewing courts will not disregard this fact lightly. Rather, where such an affirmation exists, "'the burden of proof rests with the defendant to show by a preponderance of evidence that his apparent waiver was not effective.'" *Craig,* 986 P.2d at 963 (quoting *People v. Harrington,* 179 Colo. 312, 315, 500 P.2d 360, 361–62 (1972)).

Throughout the disposition proceedings in this case, Benavidez indicated his understanding of the matters described in the relevant plea documents. He did so repeatedly and without reservation. As in *Craig,* he did so with the advice of counsel, and counsel represented to the court that Benavidez understood the substance of the agreements. *See* 986 P.2d at 965 (noting significance of counsel). Despite indicating to the trial court that he understood the penalties applicable to his pleas, Benavidez now claims that the trial court should have provided further advisement.

We reject outright any suggestion that the advisement pertaining to mandatory pa-

role was insufficient with regard to the *initial* acceptance of the pleas in cases 96CR163, 96CR943 and 96CR1135. At the first disposition of each of these matters, the agreements reached by the parties involved sentences to either Intensive Supervision Probation or Community Corrections. Benavidez would not have been subject to imprisonment (and thus, to mandatory parole) absent an act or failure to act which resulted in his violating the rules of probation or of the Community Corrections program. *See* § 18–1–105(1)(a)(V)(A). Thus, mandatory parole was not, initially, a direct consequence of his pleas in these matters as originally entered. *See Birdsong,* 958 P.2d at 1128. However, the parole violation in 96CR163 and the unresolved sentencing in cases 96CR943 and 96CR1135 were subsequently made a part of the final all-encompassing plea agreement for which a Department of Corrections sentence was specified. Therefore, mandatory parole did become a direct consequence of the earlier pleas when they were reaffirmed at the later proceeding. Thus, for purposes of testing the advisement on mandatory parole, we focus on this final agreement and the associated providency hearing.

Benavidez argues that, notwithstanding the description of mandatory parole contained in the documents associated with his pleas, the trial court's advisement did not accurately convey the fact that a parole term would attach to *his* sentence. Moreover, Benavidez claims that the trial court's advisement was misleading because the court indicated that the possible sentences listed in the plea documents were those that he had been facing if he "had been found guilty at trial" and "up until" he entered his disposition. We do not agree.

Significantly, we view the plea documents here as providing a sufficient description of mandatory parole. Benavidez was put on notice that a distinct sentencing consequence, "mandatory parole," could impact his liberty for up to five years time. *See Craig,* 986 P.2d at 965 (advisement sufficient where essential character of parole require-

ment conveyed). Although, "[a] printed form signed by a defendant is no substitute for the trial court's determination that the requirements of [Crim. P. 11] have been met," *People v. Van Hook*, 36 Colo.App. 226, 226, 539 P.2d 507, 508 (1975), a defendant's in-court affirmation that he understood the matters described in the form does provide sufficient compliance with the rule. Our duty to examine the record as a whole precludes us from disregarding the plea documents and looking only to the words used in the in-court advisement. Thus, the defendant's completion of the waiver forms and his signature thereon is not without significance.

The question, then, is whether the trial court's further advisement engendered such confusion that the meaning conveyed by the forms was obliterated. We conclude that it did not. To the contrary, the court's advisement is consistent with the consequences indicated in the plea documents. Taken in context, the trial court was simply explaining that, although Bendavidez's pre-disposition exposure was described in the written advisements, the sentence concession reached by the parties departed from the listed penalties by limiting any period of confinement in the Department of Corrections (or in a Community Corrections program) to a maximum of five years. Notwithstanding Benavidez's claims to the contrary, the trial court did not suggest that mandatory parole would not apply under his plea agreement.

Because the trial court's advisement can be harmonized with the clear meaning of the plea documents (which themselves provide an adequate description of mandatory parole), and because none of the parties indicated a contrary understanding at the providency hearing, Benavidez has failed to meet the burden necessary to overcome the presumption of validity associated with his affirmative waiver on the record. Indeed, given the fact that Benavidez received sufficient information regarding mandatory parole in the plea documents, the trial court's advisement could not have overcome the presumption of validity, without more, unless it was so misleading on its face as to make it doubtful that the

defendant understood the consequences. That is not the case here.

## C.

We note that, as in *Craig*, the mittimus forms here do not include a reference to the mandatory parole periods associated with each Department of Corrections sentence. Although these forms must be read as including the required parole term even in absence of an express notation, they should nevertheless be corrected. *See Craig*, 986 P.2d at 966. Accordingly, we direct the trial court to amend the mittimus documents to reflect the applicable mandatory parole terms.

## III.

In conclusion, we hold that Benavidez was never promised a sentence that would not include a mandatory parole term or that would place him directly on parole in lieu of imprisonment. As such, his plea was not improperly induced. Further, Benavidez was sufficiently apprised of the mandatory parole requirement to enter a knowing, voluntary and intelligent plea. Finally, because the mittimus forms do not reflect the applicable mandatory parole terms, we require that the forms be amended by the trial court. The necessity for such an amendment notwithstanding, the post-conviction court properly denied relief and its judgment is therefore affirmed.