The PEOPLE of the State of Colorado, Petitioner,

v.

Mark A. JOHNSON, Respondent.

No. 99SC780.

Supreme Court of Colorado, En Banc.

Sept. 18, 2000.

As Modified on Denial of Rehearing Oct. 10, 2000.*

* Justice COATS does not participate.

Ken Salazar, Attorney General, John J. Krause, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys for the Petitioner

David Kaplan, State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, Attorneys for the Respondent

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

In this case, we construe the words "offender's sentence" in section 17–27–105(1)(e), 6 C.R.S. (1999), which permits a court to resentence a felony offender who is rejected after acceptance by a community corrections program. We hold that under this statute, the term "offender's sentence" refers only to the term of imprisonment ordered by the trial court as part of the resentencing and excludes the mandatory period of parole that necessarily follows such imprisonment.

## II. FACTS AND PROCEDURAL HISTORY

The defendant, Mark A. Johnson, appealed the trial court's order and addendum order denying his motion for post-conviction relief pursuant to Crim. P. 35(c). The defendant, as part of a plea bargain, pleaded guilty to the sale of marihuana, a class four felony,[1] in return for dismissal of a similar charge contained in the information. As part of this disposition, the People did not oppose a sentence to a community corrections Work Release program. In addition, the People agreed to a cap of six years if the defendant were sentenced to the Department of Corrections (DOC). The trial court sentenced the defendant to six years in the Larimer County community corrections facility.

Shortly after the imposition of his sentence, the defendant signed out for the work release program and never returned, violating the terms of the program. Thereafter, the defendant was arrested and returned to

1. Section 18—18—406(8)(b)(I) states:
Except as is otherwise provided in subsection (7) of this section and except as authorized by part 3 of article 22 of title 12, C.R.S., or by part 2 or 3 of this article, it is unlawful for any person knowingly to manufacture, dispense, sell, distribute, or possess with intent to manufacture, dispense, sell, or distribute marihuana or marihuana concentrate; or attempt, induce, attempt to induce, or conspire with one or more other persons, to manufacture, dispense, sell, distribute, or possess with intent to manufacture, dispense, sell, or distribute marihuana or marihuana concentrate.
Section 18—18—406(8)(b)(III)(A) states that a violation of section 18–18–406(8)(b)(I) is presumptively a class 4 felony.

the court, and the court terminated his placement at the community corrections facility, resentencing him to six years in the DOC.

In his Rule 35(c) motions, the defendant argued that his resentence of six years to the DOC violated his plea agreement because this six-year term carries with it an additional three years of mandatory parole, establishing a total sentence of nine years.[2] Since his plea agreement contained a cap of six years, the defendant contended that the nine-year term of the resentence exceeded the cap to which he and the People agreed in the plea bargain. The defendant argued that his second sentence should be reduced to three years incarceration and three years mandatory parole to comply with his plea agreement.

The trial court denied the defendant's motions, ruling that the terms of the defendant's second sentence did not violate the plea agreement. In an addendum order, the trial court ruled that the defendant's second sentence did not violate the resentencing statute, section 17–27–105(1)(e). This statute provides that after rejection by the community corrections program, the court may resentence the offender, but the court may not impose a sentence in excess of the sentence initially opposed upon the offender:

> If an offender is rejected after acceptance by a community correction board or a community corrections program, the court may resentence the offender without any further hearing *so long as the offender's sentence does not exceed the sentence which was originally imposed upon the offender.*

§ 17—27—105(1)(e) (emphasis added).

The court of appeals reversed, holding that the term "sentence" in section 17–27–105(1)(e) refers to the "aggregate sentence" of the offender upon resentencing, or the period of imprisonment imposed plus the required period of mandatory parole. *See People v. Johnson,* 987 P.2d 928, 931 (Colo.App. 1999). The court of appeals concluded that

"by sentencing defendant to a six-year prison term plus the required three-year parole period, the trial court imposed an aggregate sentence of nine years, which impermissibly exceeds defendant's original six-year community corrections sentence, thus violating section 17–27–105(1)(e)." *Id.* Thus, the court of appeals construed the term "offender's sentence" in the resentencing statute to mean the number of years that the offender will serve in the DOC plus the period of mandatory parole following release from the DOC.

In contrast to *Johnson,* a different panel of the court of appeals in another case interpreted the words "offender's sentence" of section 17–27–105(1)(e) to refer only to the term of the offender's DOC imprisonment and to exclude the mandatory parole period which follows. *See People v. Snare,* 7 P.3d 1025, 1027, (Colo.App.1999) (selected for official publication), *cert. denied,* No. 99SC937 (Colo. Aug. 21, 2000). The *Snare* court reasoned that because the period of mandatory parole that attaches to a sentence to the DOC is beyond the discretion of the trial court, the mandatory parole period is not part of the "sentence" the trial court imposes within the meaning of the resentencing statute. *See id.* The *Snare* court concluded that under the statute a trial court may resentence an offender to imprisonment in the DOC for a number of years equal to the length of time the offender was initially sentenced to spend in community corrections, irrespective of the period of mandatory parole that attaches to the new sentence.

To resolve the conflict between the different panels of the court of appeals in *Johnson* and *Snare,* we granted certiorari on this issue.[3] We adopt the reasoning of the panel in *People v. Snare* and therefore reverse the judgment in this case and return it to the court of appeals for remand to the district court for further proceedings consistent with this opinion.

---

**2.** To avoid possible confusion, we refer to the defendant's original sentence following the plea agreement as the defendant's "original sentence" or "sentence." We refer to the sentence imposed by the trial court after the defendant's termination from the community corrections facility as the defendant's "resentence" or "second sentence."

**3.** We note that because our review is limited to construing the meaning of certain terms in section 17—27—105(1)(e), our opinion does not reach the issue of the validity of Johnson's plea under Crim. P. 11.

## III. DISCUSSION

We begin our analysis by noting that this case was decided before we announced our decisions in *Craig v. People* and *Benavidez v. People*, both of which address the complex relationship of plea agreements, advisements, and mandatory parole. *See* 986 P.2d 951 (Colo.1999) (*Craig*); 986 P.2d 943 (Colo.1999) (*Benavidez*). In *Craig*, we held that "[i]n the context of mandatory parole, any plea agreement purporting to eliminate, waive, modify or direct the trial court's application of parole in a way not available under the sentencing law would call for an illegal sentence...." *Craig*, 986 P.2d at 960. Thus, we identified that mandatory parole is "mandatory" in the sense that a trial court may not alter or modify the parole term. In *Benavidez*, we stated in *obiter dictum* that the defendant, who had been sentenced directly to community corrections "would not have been subject to imprisonment (and thus, to mandatory parole) absent an act or failure to act which resulted in his violating the rules ... of the Community Corrections program." *Benavidez*, 986 P.2d at 950. Thus, *Benavidez* recognizes a distinction between sentences of imprisonment (which carry terms of mandatory parole) and sentences directly to community corrections, which do not have terms of mandatory parole.

■ With these preliminary observations in mind, we examine the relationship between a sentence to community corrections and mandatory parole. A defendant may be placed in a community correction program in one of three ways. First, a trial court may sentence a person directly to community corrections pursuant to section 17—27—105(1). Second, the DOC may refer an offender to community corrections if that person is statutorily eligible for such assignment pursuant to section 17—27—105(2). Third, an offender may serve in community corrections as a condition of probation. *See Benz v. People*, 5 P.3d 311, 314 (Colo.2000); *People v. Wilhite*, 817 P.2d 1017, 1019 (Colo.1991).

■ Whether the sentence of an offender in a community corrections program carries a period of mandatory parole depends on the nature of the sentence. By statute, if the trial court sentences a felony offender to the DOC, then the sentence carries a term of mandatory parole that the offender must serve after release from confinement within the DOC. *See* § 18—1—105(1)(a)(V)(A), 6 C.R.S. (1999) (defining mandatory parole terms for felony sentences). If pursuant to section 17–27–105(2)(a) the DOC transfers to community corrections an offender originally sentenced to the DOC, then the offender's sentence carries with it the term of mandatory parole imposed by the statute and the offender must serve the period of mandatory parole upon release from community corrections. *See Benavidez*, 986 P.2d at 950. By contrast, if the trial court sentences an offender directly to community corrections, then the offender is not subject to mandatory parole as part of his sentence. *See id.*

■ Because the statute establishes the period of parole, the parole term is "mandatory, in that it may not be waived by the offender or waived or suspended by the trial court." *Craig*, 986 P.2d at 958 (citing § 18–1–105(1)(a)(V)(B)). Although mandatory parole is part of the overall "sentencing regime," it is a distinct element of sentencing, separate from the terms of imprisonment or length of sentence imposed by the trial court. *See id.* at 961–62. In a technical sense, the trial court imposes the period of mandatory parole when it sentences an offender to the DOC, but the period of mandatory parole is beyond the discretion of the trial court and, in effect, attaches by operation of section 18—1—105(1)(a)(V)(A). *See id.* at 958.[4]

■ Mandatory parole attaches to an offender's sentence any time a trial court sentences the offender to the DOC, whether the sentence is an initial sentence or a resentence. As we explained in *Craig*, a trial court cannot affect the term of mandatory parole when it sentences an offender to cer-

---

**4.** In its decision in *Snare*, the court of appeals stated that the executive branch, not the judicial branch, imposes the period of mandatory parole. *See* 7 P.3d 1025, 1027. This statement is imprecise. Even though the period of mandatory parole is beyond the discretion of the court and attaches by operation of statute, the court is the only authority responsible for imposing the offender's sentence which thereby triggers mandatory parole.

tain terms of confinement or custody within an approved facility. *See* 986 P.2d at 959. That is, a trial court possesses no authority to modify the period of mandatory parole imposed by operation of section 18—1—105(1)(a)(V). Furthermore, the mandatory parole statute operates without distinction between a trial court's sentencing of an offender directly to the DOC and a trial court's resentencing of an offender to the DOC. Thus, mandatory parole attaches to an offender's sentence whether the offender is initially sentenced to the DOC or resentenced to the DOC after an initial sentence to community corrections.

Having discussed the basic operation of the sentencing statutes and mandatory parole, we construe the term "offender's sentence" in section 17—27—105(1)(e), beginning with a review of our decision in *Craig*. In that case, we acknowledged that the "sentencing regime" to which an offender may be subject potentially consists of at least two components—the term of imprisonment and the period of mandatory parole. *See* 986 P.2d at 962. In *Craig*, the defendant agreed to plead guilty and stipulated to a sentence of "5 years DOC." The defendant subsequently argued in a Crim. P. 35(c) motion that the sentence to "5 years DOC" referred to the aggregate of the term of imprisonment in the DOC and the period of mandatory parole, or a sentence of two years imprisonment and three years of mandatory parole. *See id.* at 961. We disagreed and held that a reasonable person would understand that a sentence to "5 years DOC" refers only to the imprisonment component of the sentence and does not include any consideration of mandatory parole, which is a separate element of the sentencing regime. *Id.* at 961–62.

 Similarly, we conclude that the term "offender's sentence" in section 17—27—105(1)(e) refers to the period of confinement, imprisonment, or term of custody over which a court may exercise discretion when imposing a sentence, exclusive of any reference to mandatory parole. Under the com-

munity corrections statute, the trial court may impose a sentence to community corrections "which includes terms, lengths, and conditions pursuant to section 18—1—105, C.R.S." § 17—27—105(1)(b). The trial court, thus, has the same discretion to fashion the terms and lengths of a community of corrections "sentence" as it has to sentence an offender to imprisonment or confinement in a DOC facility. *See* § 18—1—105(1)(a)(V) (setting minimum and maximum terms for sentences that a court may impose for different classes of felonies). Mandatory parole remains a distinct element of the overall sentencing regime and arises only by operation of section 18—1—105 if the defendant is sentenced to the DOC. *See Craig*, 986 P.2d at 962. Thus, we conclude that "offender's sentence" within the statute refers to the length of time the trial court sentences an offender to the department of corrections and does not include any period of mandatory parole that attaches to that sentence by operation of section 18—1—105(1)(a)(V).

## IV. APPLICATION

 Having determined that the term "offender's sentence" in the statute refers to the amount of time the trial court sentences an offender to confinement in a DOC facility or to the custody of a community corrections facility, we apply these principles to this case. Johnson's original sentence to community corrections was for six years. By statute, the court could not resentence Johnson to a term that exceeded the six-year sentence. Also by statute, a mandatory parole period of three years attaches to Johnson's new sentence to the DOC for six-years. Johnson argues that the three-year period of mandatory parole that attached to the six-year DOC sentence creates an aggregate sentence of nine years, in excess of the original six-year community corrections sentence.[5] We disagree.

The trial court resentenced the defendant to six years in the DOC, which is equal to the number of years it sentenced him to in the

5. We note that under *Craig*, Johnson's plea agreement to "a cap of 6 years" in the DOC referred only to his term of imprisonment and excluded the term of mandatory parole. *See*

*Craig*, 986 P.2d at 962. Thus, Johnson cannot object that the terms the trial court imposed on resentencing violated his plea agreement.

community corrections facility. Thus, consistent with the resentencing statute, the "offender's sentence" of six years to the DOC did not exceed "the sentence which was originally imposed on the offender," six years in community corrections. § 17—27—105(1)(e).

The three-year period of mandatory parole that attached to the defendant's sentence by operation of section 18—1—105(1)(a)(V) does not alter our conclusion. The period of mandatory parole that attached by operation of section 18—1—105(1)(a)(V) is a distinct element of the defendant's sentence, separate from the term of incarceration imposed by the trial court. In other words, for the purposes of the resentencing statute, the period of mandatory parole is an incidental and distinct element of the defendant's punishment.

Hence, for the purposes of the resentencing statute, Johnson's sentence was for six years in the DOC, not nine years. For this reason, the trial court's resentencing of Johnson to the DOC for six years does not violate section 17—27—105(1)(e), even though Johnson now faces six years in the DOC and an additional three years mandatory parole after his release.

## V. CONCLUSION

Because the trial court did not exceed the initial sentence of six years to community corrections when it resentenced the defendant to six years in the DOC, the resentencing did not violate section 17—27—105(1)(e). Thus, we reverse the court of appeals and remand to that court with instructions to return the case to the trial court with instructions to reinstate the defendant's sentence to six years in the DOC.

Justice COATS does not participate.