23CA1824 Peo v Gutierrez-Barraza 08-07-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1824
Arapahoe County District Court No. 21CR1757
Honorable LaQunya L. Baker, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Gregoryo Gutierrez-Barraza,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE GRAHAM*
J. Jones and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Gregoryo Gutierrez-Barraza, appeals the trial court's restitution order.  We affirm.

## I.     Background

¶ 2     One afternoon in August 2021, J.L.M-S. (the victim) parked his car in front of an apartment complex clubhouse where he worked as a maintenance employee.  He left his car unlocked and entered the clubhouse to collect apartment keys.  At around the same time, Gutierrez-Barraza broke into the victim's unoccupied car and took a tool bag from the front passenger seat.

¶ 3     Observing Gutierrez-Barraza walking away with the tool bag, the victim confronted Gutierrez-Barraza.  Gutierrez-Barraza then ran through the apartment complex before the victim caught up with him.  After the victim demanded the return of his tools, Gutierrez-Barraza brandished a knife.  Fearing for his life, the victim ran for "about [twenty] or [thirty] seconds" back to the clubhouse.

¶ 4     The paramedics who responded to the scene checked the victim's pulse and examined him for chest pain he was experiencing "from running and from the adrenaline of the suspect scaring him with the knife."  The paramedics told the victim that his symptoms

didn't look serious but nonetheless offered to take him to the hospital. The victim declined this offer and decided to wait and see whether his chest pain would subside.

¶ 5 When the victim's condition hadn't improved by the next morning, he went to see his primary care doctor. The doctor ordered x-rays and prescribed two medications to relieve the chest pain. While going to get x-rays, the victim fainted and was taken to the emergency room. After further testing, he was diagnosed with pneumonia.

¶ 6 The People charged Gutierrez-Barraza with one count each of aggravated robbery, felony menacing, first degree criminal trespass, theft, and a crime of violence sentence enhancer for using a deadly weapon during the incident. The parties eventually resolved the case through a plea agreement. In exchange for the dismissal of his original charges, Gutierrez-Barraza pleaded guilty to an added count of attempted aggravated robbery (menacing with a deadly weapon), a class 4 felony. *See* §§ 18-4-302(1)(b), (3), 18-2-101(4), C.R.S. 2024. Additionally, Gutierrez-Barraza admitted liability for restitution, stipulated to causation, and agreed to pay restitution

2

for all pecuniary losses suffered by the victim, including those losses arising out of the dismissed charges.

¶ 7    The trial court approved the plea agreement after confirming that Gutierrez-Barraza understood its terms.  The court then sentenced him to a four-year term in the custody of the Department of Corrections, suspended upon his successful completion of three years of supervised probation.[1]  The court further ordered (1) Gutierrez-Barraza to pay restitution, (2) the prosecution to submit a motion for a specific restitution amount within forty-five days, and (3) Gutierrez-Barraza to file any objection within fifteen days of the prosecution's motion.

¶ 8    The prosecution filed a timely motion for restitution in the amount of $1,341.46.  This figure encompassed certain medical expenses that the victim's insurance carrier hadn't covered in connection with the treatment the victim received the day after the robbery.  Specifically, the victim incurred $1,329.80 for seeing his primary care doctor and receiving emergency room attention that ultimately resulted in his pneumonia diagnosis.  The remaining

---

[1] Gutierrez-Barraza stipulated to this sentence as part of his guilty plea.

$11.66 represented the amount of copays that the victim had paid for his prescribed chest pain medications.

¶ 9 Gutierrez-Barraza objected to the prosecution's restitution motion and requested an evidentiary hearing. At the hearing, the trial court found that Gutierrez-Barraza's criminal conduct was the proximate cause of the victim's medical expenses. Accordingly, the court granted the prosecution's request and ordered Gutierrez-Barraza to pay $1,341.46 in restitution to the victim.

## II.  Analysis

¶ 10 On appeal, Gutierrez-Barraza contends that the trial court's restitution award must be vacated because (1) the prosecution failed to present sufficient evidence proving that he proximately caused the victim's claimed medical expenses, and (2) the court's proximate cause determination as to those expenses was clearly erroneous. We decline to consider the merits of these contentions because the record establishes that he waived his right to challenge proximate cause under the plea agreement.

### A.  Relevant Restitution Law

¶ 11 As a general matter, all judgments of conviction must include an order regarding restitution. § 18-1.3-603(1), C.R.S. 2024.

4

"Restitution" is defined in relevant part as "any pecuniary loss suffered by a victim" that "includes but is not limited to all out-of-pocket expenses . . . proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2024. The prosecution bears the burden of proving by a preponderance of the evidence both the victim's losses and that those losses were proximately caused by the defendant's unlawful conduct. *People v. Dyson*, 2021 COA 57, ¶ 12.

¶ 12   Proximate cause in the restitution context means a cause that, in natural and probable sequence, produced the claimed loss and without which the loss wouldn't have been sustained. *Id.* at ¶ 13. A defendant's conduct doesn't have to be the "only, nearest, or last cause" to be deemed a proximate cause. *People v. Lopez*, 97 P.3d 277, 280 (Colo. App. 2004). However, a defendant generally may be ordered to pay restitution only for those pecuniary losses proximately caused by the unlawful conduct that constituted the basis of the defendant's conviction. *People v. Poot-Baca*, 2023 COA 112, ¶ 45. Consequently, unless otherwise agreed, "a district court may not award restitution for damages arising from criminal

conduct (1) of which the defendant was acquitted; (2) for which the defendant was never criminally charged; or (3) which underlies a dismissed charge." *Id.* (quoting *People v. Moss*, 2022 COA 92, ¶ 13).

### B. Additional Background – the Restitution Hearing

¶ 13 At the evidentiary hearing, the prosecution presented the testimony of the victim in support of its restitution request. The victim recounted the incident and the circumstances informing his decision to seek medical help the next day.

¶ 14 The victim testified that, before his encounter with Gutierrez-Barraza, he had no symptoms of the subsequently diagnosed pneumonia, hadn't been under any treatment for chest complications, and had "felt perfectly fine to work." He said he started to experience chest pain when, out of fear that Gutierrez-Barraza would try to hurt him with the knife, he ran back to the clubhouse. The victim testified that while he ran only "a small distance," he didn't feel well when he got to the clubhouse. He said, "I couldn't breathe, and the pain that I was feeling in my chest prevented me from . . . standing up. I had to be sitting down." The victim explained that he didn't go to the hospital immediately because he wanted to see whether his symptoms would

6

subside. He further explained that he went to see his primary care doctor the next morning "because all afternoon and night [the day before he] couldn't go to sleep. [He] had to lay down -- or sit down [on] a couch."

¶ 15  The victim testified that he passed out during that visit and was taken to the emergency room because he "had so much pain that [he] couldn't breathe anymore." He said the treating physicians in the emergency room determined that he suffered from pneumonia and "that the pain [he] was experiencing was because of the clogged lung." And the victim acknowledged that the physicians didn't inform him whether his condition had existed before the incident or was caused by it.

¶ 16  The prosecution also introduced a medical bill that the hospital had issued to the victim and receipts for the two medications that the primary care doctor had prescribed him, totaling $1,341.46. The victim testified that he had incurred those expenses.

¶ 17  In closing argument, Gutierrez-Barraza's attorney disputed that Gutierrez-Barraza's conduct was the proximate cause of the victim's medical expenses. Counsel asserted that while Gutierrez-

Barraza stipulated to causation in the plea agreement, that stipulation "only extend[ed] to actual caused damages," such as damages pertaining to the stolen tools. On the merits, counsel argued that the prosecution hadn't proved that the victim sustained chest pain and sought medical attention because Gutierrez-Barraza chased him away, rather than because his pre-existing pneumonia naturally started to manifest itself. Counsel contended that the prosecution was required, but had failed, to present medical testimony establishing more than just a "tenuous link" between his conduct and the flareup of the victim's pneumonia symptoms, necessitating the hospital visit and associated pecuniary losses.

¶ 18 The trial court disagreed with Gutierrez-Barraza's attorney. The court said that Gutierrez-Barraza should have reasonably expected that when he brandished the knife, the victim would become fearful and try to run away from the situation. The court also reasoned that the fact that the victim went to the hospital within twenty-four hours of the robbery suggested that Gutierrez-Barraza's criminal conduct exacerbated the victim's pneumonia, not that the pneumonia by itself caused the chest pain.

Under these circumstances, the court found that Gutierrez-Barraza proximately caused the claimed medical expenses:

> I do find that based off the menacing, based off the action of brandishing that knife, based off of [the victim's] fear from seeing that, [the victim's] immediate response, and [the victim's] . . . immediate reaction, I do find that [this] conduct is the proximate cause for the response — not for the pneumonia itself. . . . I think that [it] would be ridiculous for me to find that [Gutierrez-Barraza's conduct] caused pneumonia, but it did cause [the victim], at minimum, to have to go to the doctor. And even if [the emergency room physicians] found no pneumonia whatsoever, I still would've found that the restitution was in place because there still would've been a cost for just having to be admitted, just having to sit there, just hav[ing] to see a doctor.

## C. Gutierrez-Barraza Waived His Right to Challenge Proximate Cause Under the Plea Agreement

¶ 19 In challenging this ruling, Gutierrez-Barraza contends that the prosecution failed to present sufficient evidence from which the trial court could find that the robbery exacerbated the victim's pre-existing pneumonia and, therefore, was the proximate cause of his (1) chest pain, (2) decision to go to the doctor the next day, (3) loss of consciousness at the doctor's office, and (4) later transfer to the emergency room. Additionally, Gutierrez-Barraza contends

that because the victim's fainting episode constituted an independent intervening cause, the trial court erred by awarding restitution for any medical expenses pertaining to the care that the victim received in the emergency room. We affirm the restitution order, though on different grounds than those relied on by the trial court. *See People v. Chase*, 2013 COA 27, ¶ 17 ("[W]e may affirm a trial court's ruling on grounds different from those employed by that court, as long as they are supported by the record."). Specifically, we conclude that Gutierrez-Barraza waived his right to challenge the existence of causal connection between his unlawful conduct and the awarded medical expenses by virtue of his plea agreement.

### 1. Waiver and Standard of Review

¶ 20    Statutory rights, like those provided by the restitution statute, can be waived. *See Richardson v. People*, 2020 CO 46, ¶ 24. Waiver is the intentional relinquishment of a known right or privilege. *People v. Rediger*, 2018 CO 32, ¶ 39. A waiver may be explicit, as when a defendant "expressly abandons an existing right or privilege," or it may be implied, as when a defendant "engages in conduct that manifests an intent to relinquish a right or privilege or

acts inconsistently with its assertion." *Forgette v. People*, 2023 CO 4, ¶ 28.

¶ 21    To determine whether Gutierrez-Barraza waived his right to assert that his conduct wasn't the proximate cause of the victim's claimed losses, we turn to the terms of his plea agreement and the statements made at the providency hearing. *See Benavidez v. People*, 986 P.2d 943, 948 (Colo. 1999) (In determining the validity of any particular view of a plea agreement, "we look not only to the written instruments associated with the agreement, but also to extrinsic evidence in the form of oral statements."). The interpretation of a plea agreement is a question of law that we review de novo. *People v. Propst*, 2021 COA 13, ¶ 11.

## 2.    Application

¶ 22    As noted above, Gutierrez-Barraza's plea agreement addressed his obligation to pay restitution to the victim of his robbery. In the part of that agreement labeled "Sentence Agreement," the parties included the following provision regarding restitution:

> Defendant is obligated to pay restitution as defined in [section] 18-1.3-602. The defendant admits to liability, *stipulates to causation,* and agrees to pay restitution for all pecuniary losses suffered by all victims for all charged

11

counts, even those dismissed as part of this plea agreement. Pursuant to [section] 18-1.3-603(1)(b), defendant waives objection to the final amount of restitution being determined within [ninety-one] days following the order of conviction.

(Emphasis added.) Gutierrez-Barraza and his counsel signed this document and dated it the same day on which the court held a providency hearing. Then, at the providency hearing, Gutierrez-Barraza confirmed that he had executed the plea agreement voluntarily and after consulting with his counsel, that he understood its terms, and that he wanted the court to accept his guilty plea in accordance with the agreement. Based on these representations, the court found that Gutierrez-Barraza's guilty plea was "made freely, voluntarily, and knowingly, and with the assistance of [c]ounsel." Thus, the record shows that Gutierrez-Barraza stipulated to causation for purposes of restitution under the plain language of his plea agreement.

¶ 23 The record also shows that at the time he entered the stipulation, Gutierrez-Barraza was aware that the prosecution would seek restitution for the losses he now disputes on appeal on proximate cause grounds. At the providency hearing, the

12

prosecutor informed the court that she had told defense counsel "that [the prosecution] would not be requesting anything specific to the victim's pneumonia diagnosis outside of the initial hospital stay." Put differently, the prosecution had provided notice to Gutierrez-Barraza before the entry of his guilty plea that its restitution request would include certain specific expenses relating to the victim's pneumonia diagnosis. The prosecution limited its later motion to the previously identified costs of the initial hospital stay, excluding other costs.

¶ 24    We discern no indication that the stipulation to causation under the plea agreement was intended to apply to "actual caused damages" — as Gutierrez-Barraza asserted during the restitution hearing — but not to the damages relating to the victim's medical treatment following the robbery. To the contrary, the plea agreement broadly provided that Gutierrez-Barraza would pay restitution for *all* pecuniary losses sustained by the victim, even those losses that arose out of the conduct underlying the dismissed counts. Likewise, the statements the prosecutor made during the providency hearing suggested that Gutierrez-Barraza was agreeing to pay restitution knowing that he would be on the hook for the

13

victim's medical expenses. *See People in Interest of A.V.*, 2018 COA 138M, ¶ 16 (holding that the defendant waived his proximate cause challenge to the restitution award, in part, because the prosecution provided timely notice of the restitution amounts requested).

¶ 25  Nonetheless, Gutierrez-Barraza argues that he retained the right to challenge causation because he didn't agree to a specific *amount* of restitution in the plea agreement and, like in *People v. Barbre*, 2018 COA 123, ¶ 12, "the issue of causation is inextricably intertwined with the issue of the proper amount of restitution." In other words, he posits that his *general* stipulation to causation doesn't preclude him from raising issues on appeal that dispute the amount of the restitution award.

¶ 26  But the problem with this argument is that it mischaracterizes the substance of Gutierrez-Barraza's challenges to the restitution order. *See Martinez v. People*, 2024 CO 6M, ¶ 20 (noting that we consider the substance of a challenge to a restitution order, not its form). Our review of his briefing reveals that at its core, Gutierrez-Barraza takes issue with the trial court's finding that he proximately caused any of the medical expenses that the victim sustained the day after the incident. Indeed, while

Gutierrez-Barraza frames some of his arguments as claims that the evidence was insufficient to support the court's restitution award, he directs them solely to the issue of causation.

¶ 27    For example, Gutierrez-Barraza contends that the court erred by awarding $1,329.80 for the victim's hospital treatment because the medical bill didn't include a breakdown of services that the victim received at the primary care doctor as opposed to the emergency room.  In doing so, however, Gutierrez-Barraza contends that he is not responsible for the latter expenses because his conduct wasn't the proximate cause of the victim's fainting, which then led to the victim's admission to the emergency room.  Consequently, we disagree with Gutierrez-Barraza's argument that his stipulation to causation doesn't operate as a waiver because he is challenging the amount of the restitution award.[2]

¶ 28    In sum, we conclude that Gutierrez-Barraza waived his right to challenge proximate cause under the explicit terms of his plea agreement.  He may not now force the issue of proof on the very issue he stipulated for purposes of obtaining a favorable plea.  *See*

---

[2] On the contrary, Gutierrez-Barraza stipulated to causation of all pecuniary losses, without limitation.

*People v. Quinonez*, 735 P.2d 159, 164 (Colo. 1987) ("Where a defendant agrees to make restitution at the time of entering a plea, he cannot later disavow the agreement on the basis that there was no showing that he had caused the victim's injury."), *superseded by statute on other grounds*, Ch. 232, sec. 1, § 16-18.5-102(4)(a), 2000 Colo. Sess. Laws 1031-32, *as stated in Dubois v. People*, 211 P.3d 41 (Colo. 2009); *People v. Sosa*, 2019 COA 182, ¶ 30 ("Both sides ought to be free to leverage restitution as part of a fair disposition of the case."). Given this conclusion, we need not consider the merits of Gutierrez-Barraza's argument that the trial court erred by requiring him to pay $1,341.46 in restitution to the victim because his conduct wasn't the proximate cause of those losses.

## III.   Disposition

¶ 29    The restitution order is affirmed.

JUDGE J. JONES and JUDGE MOULTRIE concur.