Melvin Leroy CLARK, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 99SC175.

Supreme Court of Colorado,
En Banc.

Aug. 21, 2000.

Rehearing Denied Sept. 11, 2000.

David Kaplan, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, John D. Seidel, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to the court of appeals to determine whether the trial court erred by denying the petitioner's Crim. P. 35(c) motion for post-conviction relief. The court of appeals affirmed the trial court's judgment in an unpublished opinion. *See People v. Clark*, No. 98CA0249 (Colo.App. Dec. 31, 1998) (not selected for official publication). We now reverse the court of appeals' judgment and remand the case for further proceedings consistent with this opinion.

### I.

In 1996 petitioner Melvin Clark ("Clark") pled guilty to one count of first degree criminal trespass, a class five felony. *See* § 18–4–502, 6 C.R.S. (1997). Clark's plea agreement provided in part:

I know that if I plead GUILTY, the maximum sentence of incarceration is: extraordinary aggravating circumstances—6 years—cap 3 under plea [agreement] plus parole and fine $100,000.

At Clark's providency hearing, the parties confirmed the three-year "cap" on Clark's sentence of incarceration. The following exchange ensued during Clark's Crim. P. 11 advisement:

THE COURT: Now, pursuant to the disposition, if I accept your plea, I'll find you guilty, [and] this matter will be set for a sentencing hearing. Do you understand that?

CLARK: Yes.

THE COURT: At that hearing, a presentence probation report will be received by me. You can suggest amendments, corrections, or additions to it. You can then present evidence. As part of the evidence, you can either testify, make a statement, or remain silent. That will be your decision to make. Your counsel can make a recommendation, the People can then present evidence, make a recommendation, and I will then decide what sentence is to be imposed. If it's to the Department of Corrections, it will not exceed three years. Do you understand that?

CLARK: Yes.

THE COURT: Now this is a Class 5 Felony, punishable in a presumptive range of up to three years. If extraordinary aggravating circumstances exist, it could have been [punishable by] as much as six years, and we're looking at a minimum of one year, but also a term of parole, and [there] could be a fine not to exceed $100,000. Do you understand the possible penalties for this offense?

CLARK: Yes.

Neither the prosecution nor the trial court advised Clark on the record of the exact length of mandatory parole he would face by pleading guilty. In fact, Clark's class five felony offense carried a two-year term of mandatory parole following incarceration. *See* § 18–1–105(1)(a)(V)(A), 6 C.R.S. (1999).

At the conclusion of the providency hearing, the trial court found that Clark had waived his right to trial and entered his plea knowingly, intelligently, and voluntarily. The trial court then accepted Clark's plea of guilty. In a subsequent proceeding, Clark was sentenced to a two-and-one-half-year term in the Department of Corrections ("DOC").

In 1997, Clark filed a Crim. P. 35(c) motion for post-conviction relief, alleging that his sentence to two-and-one-half years in the DOC plus two years of mandatory parole exceeded the three-year cap for which he bargained in his plea agreement. He also alleged that he never was advised that he would be subject to a two-year term of mandatory parole after completing his term of incarceration.

The trial court denied Clark's motion without a hearing. In its written order, the trial court concluded that Clark's plea agreement and Crim. P. 11 advisement adequately notified him that a term of parole would follow incarceration. The trial court also determined that, in any event, the term of Clark's combined sentence to incarceration and parole was less than the maximum term that Clark was advised he could receive.

The court of appeals affirmed the trial court's denial of Clark's petition, agreeing with the trial court that Clark's plea agreement and Crim. P. 11 advisement adequately notified him that he would be required to serve a period of parole in addition to any sentence to the DOC. The court of appeals further found that although Clark was not advised of the length of his parole term, the law did not require that he be so advised. Finally, the court of appeals found that the imposition of mandatory parole did not violate Clark's plea agreement because the agreement called for a three-year cap on his sentence to *incarceration* and did not purport to limit Clark's mandatory term of *parole*. The court of appeals remanded the case to the trial court for entry of the mandatory parole term on the mittimus.

## II.

In *Craig v. People*, 986 P.2d 951 (Colo. 1999), and its companion case, *Benavidez v. People*, 986 P.2d 943 (Colo.1999), we consid-

ered post-conviction challenges to sentences where the petitioners alleged that the mandatory parole portion of their sentences violated the terms of their plea agreements with the People and that they were inadequately advised that mandatory parole would be a consequence of pleading guilty. We held that such cases require courts to examine two considerations related to the requirement that pleas be entered knowingly, voluntarily, and intelligently. *See Craig,* 986 P.2d at 957–59; *Benavidez,* 986 P.2d at 947.

■ First, the court must determine whether the defendant was promised, as a material inducement to his plea, a sentence related to mandatory parole that was statutorily prohibited. *See Craig,* 986 P.2d at 957; *Benavidez,* 986 P.2d at 947. If so, the plea cannot stand in light of this illegal inducement and may be withdrawn. *See Craig,* 986 P.2d at 959–60; *Benavidez,* 986 P.2d at 947.

■ Second, the court must determine whether the defendant was properly advised of mandatory parole and its length. *See Craig,* 986 P.2d at 957–59, 963; *Benavidez,* 986 P.2d at 947. If the advisement was improper in this respect, the defendant must be given the opportunity to withdraw his plea, unless the error in the advisement is harmless or can be rendered harmless. *See Craig,* 986 P.2d at 964; *Benavidez,* 986 P.2d at 947–48. The error is harmless if the length of the prison sentence and the mandatory parole term, combined, falls within the range of penalties that the defendant was advised he could receive as a consequence of his plea.[1] *See Craig,* 986 P.2d at 964–65; *Benavidez,* 986 P.2d at 948. Similarly, the error can be rendered harmless by substituting a legal prison sentence so that the length of the substituted prison sentence and the parole term, combined, falls within the range of penalties of which the defendant was advised and risked receiving as a result of his

decision to plead guilty. *See Craig,* 986 P.2d at 964–65; *Benavidez,* 986 P.2d at 948.

This approach to analyzing and remedying erroneous advisements regarding mandatory parole applies with equal force to situations where a defendant has agreed to plead guilty in return for a sentencing concession, such as a stipulated term of imprisonment. Under our case law and rules of criminal procedure, sentencing concessions included in a plea bargain fundamentally alter the penalties that a defendant risks receiving by pleading guilty.

■ Where the defendant's guilty plea is induced by a plea agreement that includes a sentencing stipulation, the trial court must describe not only the penalties that could attach were the case to proceed to trial, but also the specific points where the stipulated sentence would differ from the general Crim. P. 11 advisement. *See Craig,* 986 P.2d at 951. If the trial court ultimately rejects sentencing concessions contemplated by a plea agreement, the defendant may withdraw his guilty plea. *See* Crim. P. 32(d).

■ Accordingly, when engaging in a harmless error analysis in a case where the defendant pled guilty pursuant to a plea agreement that included a stipulated term of imprisonment, we assess the extent of the defendant's risk by combining the stipulated maximum term of imprisonment with any period of mandatory parole of which the defendant was advised at the providency hearing. For purposes of assessing the full range of penalties that the defendant risked receiving, the stipulated maximum term of imprisonment supplants the statutory maximum term of imprisonment described by the trial court during the Crim. P. 11 advisement.

---

1. In *Craig* and *Benavidez,* we noted that a failure to advise a defendant of the fact of mandatory parole is harmless *ab initio* if the "prison sentence imposed and the mandatory parole term, combined, do not exceed the prison term the defendant was advised of and risked receiving." *Benavidez,* 986 P.2d at 948; *see also Craig,* 986 P.2d at 964. Similarly, in a case where the defendant is advised that pleading guilty will subject him to a term of mandatory parole less than that required by law, the error may be harmless if the length of the defendant's sentence to incarceration and his term of mandatory parole, combined, does not exceed the length of the term of incarceration plus the term of mandatory parole of which he was advised and risked receiving.

### III.

In this case, neither party argues that the People induced Clark's plea by offering him a sentence without mandatory parole. Accordingly, we address only whether Clark was properly advised of mandatory parole and its length.

### A.

■ The record clearly indicates that Clark was advised that he would be placed on parole after he was released from incarceration. The People concede, however, that Clark was not advised of the length of mandatory parole that he would have to serve after completing his sentence to the DOC. Nevertheless, the People argue that Clark's plea must not be vacated unless Clark can prove (1) that he did not have actual knowledge that a two-year term of mandatory parole would follow his sentence of incarceration and (2) that he would not have pled guilty had he understood the parole consequences of the plea.

Some jurisdictions have held that inadequate advisements regarding mandatory parole do not justify relief from a conviction on a guilty plea unless the defendant alleges and proves three facts: (1) that neither the defendant's counsel nor the trial court advised the defendant that parole automatically would follow any term of incarceration; (2) that the defendant did not have actual knowledge that parole automatically would follow any term of incarceration; and (3) that the defendant would not have pled guilty had he understood that parole automatically would follow any term of incarceration. *See, e.g., United States v. Timmreck,* 441 U.S. 780, 783–84, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *In re Moser,* 6 Cal.4th 342, 24 Cal.Rptr.2d 723, 862 P.2d 723, 729 (1993); *People v. Miller,* 107 Ill.App.3d 1078, 63 Ill.Dec. 712, 438 N.E.2d 643, 650 (1982).

■ We decline to require Clark to prove his subjective knowledge at the time he entered his plea. *See Westendorf v. People,* 171 Colo. 123, 125, 464 P.2d 866, 867–68 (1970). Likewise, we will not demand evidence that Clark would not have entered his plea if he had known that he would be re-quired to serve a term of mandatory parole. Such requirements would be inconsistent with our decisions in *Craig* and *Benavidez,* in which we held that the appropriate inquiry is whether the record as a whole indicates that the defendant received sufficient notice of the direct consequences of a guilty plea. *See Craig,* 986 P.2d at 964; *Benavidez,* 986 P.2d at 951.

### B.

Having found Clark's advisement inadequate because he was not informed that his plea would subject him to a mandatory term of two years of parole, we must address whether the error was harmless or can be rendered harmless.

### 1.

■ An error in a defendant's Crim. P. 11 advisement regarding mandatory parole is harmless *ab initio* if the length of the defendant's sentence to incarceration and the term of mandatory parole, combined, does not exceed the length of the sentence of imprisonment and term of parole that the defendant risked receiving as a direct consequence of his plea of guilty. *See Craig,* 986 P.2d at 964. In this case, the trial court accepted the stipulated sentence as part of Clark's plea bargain. It advised Clark that it would sentence him to no more than three years in the DOC if he entered a plea of guilty. Both Clark's Crim. P. 11 advisement and his written plea agreement indicated that he also would serve a term of parole in addition to his sentence of incarceration. Accordingly, Clark was advised that by entering a plea of guilty, he risked receiving a maximum sentence of three years in the DOC followed by an unspecified term of parole.

Because neither Clark's agreement nor the Crim. P. 11 advisement specified the duration of the term of mandatory parole that Clark would serve as a consequence of pleading guilty, we are unable to determine the length of the sentence of incarceration and term of parole that Clark was advised he could receive. Nevertheless, the inadequate advisement would be harmless *ab initio* if the total length of Clark's sentence to incarceration

and his term of mandatory parole did not exceed the length of the term of incarceration he risked receiving by pleading guilty. *See Benavidez*, 986 P.2d at 948; *Craig*, 986 P.2d at 964. Where the defendant's term of incarceration plus the term of mandatory parole is less than the maximum term of incarceration he or she risked receiving, the defendant is not prejudiced by the failure to advise of the length of mandatory parole.

Here, the trial court advised Clark that the crime of first degree criminal trespass carried a maximum sentence of six years if aggravated circumstances were found. Clark's plea agreement, however, provided for a stipulated maximum term of incarceration of three years. Accordingly, under our case law and rules of criminal procedure, the maximum term of imprisonment that Clark risked by pleading guilty was three years.

For purposes of determining the full range of penalties that Clark risked by pleading guilty, the three-year stipulated term of imprisonment supplanted the six-year statutory maximum term of incarceration mentioned by the trial court during the Crim. P. 11 advisement. The combined length of Clark's actual sentence to incarceration (two-and-one-half years) and mandatory parole (two years) is four-and-one-half years, which is longer than the three-year maximum term of incarceration he risked receiving under his Crim. P. 11 advisement and the terms of his plea bargain. Accordingly, we cannot deem harmless the trial court's failure to advise Clark of the length of mandatory parole that he would serve as a consequence of his plea.

### 2.

We further find that the inadequacy of the trial court's advisement cannot be rendered harmless by modifying Clark's sentence. As we noted in *Craig*, "the failure to advise of the 'correct and complete penalty' may be rendered harmless by imposing a modified sentence that removes the burden of the undisclosed consequence." *Craig*, 986 P.2d at 964 (quoting *People v. Baca*, 179 Colo. 156, 158, 499 P.2d 317, 318 (1972)).

By pleading guilty under an agreement that included a stipulated sentence, Clark risked a maximum term of three years in the DOC plus an unspecified term of parole. The "undisclosed consequence" of Clark's guilty plea was two years of mandatory parole. By contrast, however, the fact that Clark would serve some parole following his incarceration was disclosed, both in the written plea agreement and by the trial court during Clark's Crim. P. 11 advisement.

We can find no reasonable standard for modifying Clark's sentence in a way that removes the burden of the undisclosed term of parole without disregarding Clark's plea agreement and the Crim. P. 11 advisement given by the trial court. Modifying Clark's sentence so that the combined length of his term of incarceration and his term of mandatory parole is less than or equal to the length of the stipulated term of incarceration would be inconsistent with the terms of the Crim. P. 11 advisement and Clark's plea agreement. Such a modification would treat Clark's plea agreement and the Crim. P. 11 advisement as limiting his maximum sentence to one year in the DOC plus two years of parole, even though the trial court unambiguously advised Clark that he would face a maximum of three years in the DOC plus an additional period of parole.

The facts here differ significantly from a case in which a defendant's Crim. P. 11 advisement and plea agreement contain no mention of parole. In that type of case, it is reasonable to hold that the full range of penalties that the defendant risked receiving by pleading guilty was equal to the maximum term of incarceration specified in his plea agreement or Crim. P. 11 advisement. Under such circumstances, the court may modify the defendant's sentence to render harmless an inadequate advisement regarding the length of mandatory parole.

Where, however, a defendant was advised that his sentence would include a term of parole in addition to a stipulated maximum term of incarceration, it would not be reasonable to hold that the full range of penalties that the defendant risked receiving is limited to the term of incarceration specified in his plea agreement or the Crim. P. 11 advisement. If the length of mandatory parole is specified but incorrect, the court may com-

bine that length with the advised maximum term of incarceration and use the total as the basis for modifying the defendant's sentence.[2] If the defendant is advised of mandatory parole but not its duration, however, the court simply cannot calculate the maximum length of the full range of penalties that the defendant risked receiving for the purpose of modifying the sentence.

Because Clark was advised that he would serve a term of parole following incarceration, his sentence cannot be modified. Thus, Clark's only available remedy for the inadequate advisement under these facts is withdrawal of his guilty plea. Accordingly, Clark must be given the opportunity to withdraw his guilty plea upon remand to the trial court.[3]

We reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.

Justice COATS specially concurs.

Justice COATS, specially concurring:

I concur in the result but write separately to make clear my own reasons for not finding harmless the trial court's failure to advise the defendant of the length of his mandatory parole term.

In order for a guilty plea to be constitutionally effective, the record as a whole must reflect that the defendant was given sufficient notice of, among other things, the possible penalties. See Craig v. People, 986 P.2d 951, 963–64 (Colo.1999). A period of mandatory parole over and above the possible term of imprisonment to which the defendant could be sentenced has been construed to be a "direct consequence" of the resulting conviction, and therefore the length of such a mandatory parole term is one of the possible penalties of which the defendant must be

made aware. Id. Even a failure to advise the defendant of the length of a mandatory parole term, however, does not render the plea unintelligent and therefore ineffective as long as the sum of the mandatory parole term and the term of years to which the defendant is actually sentenced does not exceed the maximum sentence he was advised that he risked receiving by pleading guilty. Id. at 964. Where the defendant is not made to suffer the burden of an undisclosed consequence, the failure to advise of the "correct and complete penalty" has been characterized as harmless. Id.

Guilty pleas may of course be entered as the result of plea agreements in which the prosecutor makes sentence recommendations or concessions. See § 16–7–301(2)(a), 6 C.R.S. (1999); Crim. P. 11(f)(2)(I); see also People v. Wright, 194 Colo. 448, 573 P.2d 551 (1978) (equating sentence "concessions" and "recommendations"). These sentence concessions do not, however, alter the range of possible penalties to which the defendant may be sentenced for the particular offense to which he pleads guilty. The trial judge in every case must exercise an independent judgment in deciding whether to grant charge and sentence concessions, and even though the judge may initially concur, if he ultimately decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, the effect of that decision is merely to permit the defendant to withdraw his guilty plea. Section 16–7–302(2)and(3); Crim. P. 11(f)(5); 32(d).

Unlike the majority, I read the record as demonstrating that the sentencing court never advised the defendant of the maximum sentence permitted by statute for his offense. Instead, it expressly told him that any sentence to the Department of Corrections would not exceed the sentence concession or

---

**2.** For example, had the trial court erroneously advised Clark that he would serve only one year of parole after completing his sentence of incarceration, his sentence could have been modified to render such an erroneous advisement harmless. Under these hypothetical facts, the combined length of the stipulated sentence of incarceration and the (erroneously) advised term of mandatory parole would be four years. Clark's sentence then could have been modified to two

years in the DOC plus two years of mandatory parole.

**3.** We recognize that the court of appeals recently reached the opposite conclusion in a virtually identical case. See People v. Priester, 996 P.2d 766, 770 (Colo.App.2000). To the extent that the court of appeals' decision in Priester conflicts with our resolution of this case, it is disapproved.

"cap" of three years and further that the crime to which he was pleading "could have been" punishable by as many as six years. The combination of these two statements amounted to nothing less than an advisement that a six-year sentence would *not* be possible in the defendant's case. In the face of this advisement at the providency hearing, even the record as a whole could not evidence adequate notice to the defendant that by pleading guilty he risked total punishment of six years.

Because his two and one-half-year sentence to the Department of Corrections plus his statutory two-year mandatory parole term exceeded the highest number of years of punishment the defendant was advised that he risked receiving by pleading guilty, the failure of the record as a whole to reflect any notice of the length of the statutorily mandated parole term could not be considered harmless. If, however, I understood the defendant to have been advised, as the majority does, "that the crime of first degree criminal trespass carried a maximum sentence of six years," *see* maj. op. at 168, I would find that his ultimate sentence, including mandatory parole, did not exceed the possible penalty he was advised that he risked receiving.

The majority opinion states that in assessing the extent of the defendant's risk in cases involving a guilty plea entered pursuant to a plea agreement, a stipulated maximum term of imprisonment "supplants" the statutory maximum term of imprisonment described by the trial court during the Crim. P. 11 advisement. It therefore concludes that a failure to advise of a mandatory parole term will be harmless only if the term of years to which the defendant is sentenced and his mandatory parole term fall within the sentence stipulation. To the extent that the majority intends merely to expressly indicate that a defendant has not been advised, for purposes of this harmless error analysis, that he risks receiving a sentence by pleading guilty if that sentence is one that he is also advised he can avoid by moving to withdraw his plea upon sentencing, I agree.

In its analysis, however, the majority uses the terms "sentence," "incarceration," and "imprisonment" interchangeably. In my view, in an advisement about possible penalty ranges, terms like "sentence," "punishment," and "penalties," communicate something far different from a reasonable understanding of terms like "incarceration," and "imprisonment." For purposes of this harmless error analysis, the relevant question is whether the defendant actually receives a sentence outside the range of which he was advised. Therefore, whether a failure to adequately advise a defendant about a mandatory parole term is harmless depends, in my view, entirely upon the specific conditions of the plea agreement and the specific content of the advisement.

In *Craig v. People,* 986 P.2d 951 (Colo. 1999), and *Benavidez v. People,* 986 P.2d 943 (Colo.1999), this court found that the specific plea agreements in those cases were not violated precisely for the reason that a sentence recommendation, concession, stipulation, or "cap" to a number of years in the Department of Corrections or prison could only be reasonably understood to refer to the number of years of incarceration the defendant could be made to serve. We held that such a plea agreement could not reasonably be understood to place any limitation on that portion of a sentence that is prescribed by statute and over which the sentencing court has no control. A defendant pleading guilty pursuant to such a sentence concession therefore cannot reasonably understand that he is at risk of receiving only the bargained-for sentence. Instead, a reasonable person in this position understands that only his risk of incarceration is limited by the sentence "cap" and that he may still be subject to some additional form of punishment, like mandatory parole, that is automatically required by statute as part of every sentence.

Rather than being "supplanted" by a plea agreement, an advisement purporting to advise the defendant about the maximum possible sentence for his offense can serve to put him on notice that the total punishment he risks by pleading involves more than incarceration. An advisement that is limited to the maximum possible "incarceration" or "prison" term, without more, is unlikely to change a defendant's reasonable understand-

ing of his risk if he is pleading pursuant to a stipulation to a lesser period of incarceration. However, an advisement in terms of a maximum "penalty" or "punishment" or "sentence," especially when given after acknowledgement of a "cap" on actual incarceration, or, as in this case, when given in conjunction with an advisement of a mandatory parole term of unspecified length, should be understood to put a defendant on notice that a mandatory parole term, not limited by his bargain, can extend to this greater period of punishment.

A defendant has been adequately advised of the possible penalties, and therefore the failure to specifically advise him of the length of a mandatory parole term is harmless, as long as his actual sentence, the total sum of his terms of incarceration and mandatory parole, does not exceed the maximum punishment he was advised that he risked receiving. A stipulation to only one component of a defendant's sentence can never alone be determinative of that risk. A defendant's reasonable understanding of the punishment he risks receiving is clearly dependent upon both his plea agreement and his full advisement, including his advisement of the maximum sentence that is possible for his offense.

The question whether a violation of Rule 11 should be treated as harmless cannot be separated from the nature of the proceeding in which review is sought. The federal courts have drawn a clear distinction between violations of Fed.R.Crim.P. 11 that are purely formal and those that are variously described as "constitutional," or "jurisdictional," or as resulting in "a complete miscarriage of justice," or "a proceeding inconsistent with the rudimentary demands of fair procedure." *See United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). For important reasons of finality and confidence in the integrity of judicial procedures, *see id.* at 784, 99 S.Ct. 2085, only the latter group of Rule 11 violations is subject to collateral attack by motion for postconviction relief.

While this court has never expressly articulated the same distinction, it has similarly recognized that postconviction relief pursuant to Crim. P. 35(c) is limited to error of a certain type and magnitude. *See People v. Rodriguez,* 914 P.2d 230, 254–55 (Colo.1996) (constitutional error); *People v. Crawford,* 183 Colo. 166, 515 P.2d 631 (1973) (constitutional dimension); *People v. Shearer,* 181 Colo. 237, 508 P.2d 1249 (1973) (constitutional magnitude). Likewise, we have regularly held that Crim. P. 11 will not be treated as a ritualistic litany or formula. *See, e.g., People v. Drake,* 785 P.2d 1257, 1268 (Colo.1990) (quoting *Henderson v. Morgan,* 426 U.S. 637, 644, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)).

A providency hearing is designed to evidence the constitutional validity of guilty pleas. *See People v. Leonard,* 673 P.2d 37 (Colo.1983). While compliance with the requirements of Crim. P. 11 will therefore normally satisfy constitutional due process concerns, *see People v. District Court,* 868 P.2d 400 (Colo.1994), violations of the rule do not necessarily amount to a constitutional violation. At least since *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), a debate has raged over the extent and nature of the advisement that is constitutionally required. Our failure to tailor our analysis of harmfulness as nearly as possible to include only deficiencies that actually affect the constitutional validity of a plea results in a windfall to uninjured defendants at considerable cost to the entire justice system.

I am reluctant to join any analysis of harmlessness that does not permit examination of the record as a whole and instead allows a defendant's stipulation to a term of imprisonment to supplant an advisement of his maximum possible sentence. I therefore specially concur in the judgment.