Michael YOUNG, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 00SC240.

Supreme Court of Colorado.
En Banc.

July 2, 2001.

As Modified on Denial of Rehearing
Aug. 20, 2001.

David S. Kaplan, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, CO, Attorneys for Petitioner.

Ken Salazar, Attorney General, Christine Cates Brady, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, CO, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

■■■ Defendant, Michael Shane Young, claims that his plea of guilty was infirm because the trial court did not advise him of the mandatory parole consequences of a sentence to incarceration at the time of the providency hearing. In analyzing Defendant's claims, we first restate the proposition that mandatory parole is a direct consequence of a plea of guilty to a felony that could carry a prison sentence. Hence, the trial court must so advise the defendant at the providency hearing, although the failure to do so may be harmless error. Even if the parties have reached a stipulated plea agreement contemplating a sentence to probation or community corrections, the providency advisement must include both the possible incarceration sentence and the attendant mandatory parole, because those are the penalties the court may impose as a result of the guilty plea. Although the trial court did err in this case in failing to advise the defendant of mandatory parole, the error was harmless because the defendant's sentence to incarceration and associated mandatory parole fit within the scope of the sentence that the trial court advised the defendant he risked receiving as a result of his guilty plea. Accordingly, we affirm the court of appeals' decision in *People v. Young*, No. 98CA791, (Colo.App. Dec. 16, 1999) (not selected for official publication), upon somewhat different reasoning.

I.

On January 14, 1994, in Case No. 93CR696, Michael Shane Young (Young) pleaded guilty to first degree criminal trespass, a class 5 felony pursuant to section 18–4–502, 6 C.R.S. (2000), and misdemeanor criminal mischief, a class 2 misdemeanor pursuant to section 18–4–501(1), 6 C.R.S. (2000). At the providency hearing the trial judge advised Young that the class 5 felony carried a presumptive sentence from one to three years in the Department of Corrections (DOC) plus two years of mandatory parole. On April 4, 1994, the trial court sentenced Young to six years probation.

The following year, in Case No. 95CR95, the State charged Young with sale of a schedule II controlled substance, a class 3 felony in violation of section 18–18–405(2)(a)(I), 6 C.R.S. (2000), and attempted sale of a schedule II controlled substance, a class 4 felony in violation of section 18–2–101, 6 C.R.S. (2000). On August 21, 1995, Young pled guilty to attempt to commit the crime of unlawful sale of a schedule II controlled substance. The plea agreement included a stipulated sentence of five years in DOC. Additionally, Young agreed to confess to the State's motion to revoke his probation violation allegation in 93CR696. At the providency hearing, the trial court stated to Young that "the parties here have agreed that you would be sentenced to prison, if you do plead guilty, for five years. I don't have to accept that agreement, and I say that because I will know more about the case and more about you at the sentencing hearing." The court advised Young that he could be sentenced within a range of two to six years, or, upon a finding of extreme aggravating circumstances, up to twelve years. The trial court failed to advise the defendant of a mandatory parole period.

The trial court sentenced Young to community corrections for concurrent terms of three and six years. Although both the mittimus and the transcript of the sentencing proceeding indicate that the trial court imposed a sentence of six years to community corrections, the minute order entered after sentencing reflects a sentence of five years to community corrections. The trial court later acknowledged that the correct sentence was five years in community corrections.

Because the community corrections facility had a wait list, the court remanded Young into custody until bed space became available. While Young awaited entrance into community corrections, the State filed a Motion to Terminate and Transfer Custody. The motion alleged that Young had "violated the terms and conditions of his sentence" because "while awaiting placement at Com-

munity Corrections, the defendant's motivation level and attitude toward supervision has significantly deteriorated and poses a substantial risk of management-related difficulties."

The trial court accepted that Young was no longer appropriate for community corrections, and held a hearing at which he transferred Young's two sentences to five years in DOC and three years in DOC to be served concurrently. In imposing the sentence, the court mentioned that, "There is a period of parole prescribed by the statute." The court's mittimus stated "DOC 5 years. Statutory parole."

On November 21, 1997, Young filed a Crim. P. 35(c) motion requesting that his five year sentence to DOC be reduced because the district court did not advise him of the mandatory parole period when he pleaded guilty in that case. The district court denied the motion. Young appealed, arguing that his five year DOC sentence should be reduced to two years of incarceration plus three years of mandatory parole to comport with his reasonable understanding of the 1995 plea agreement. The court of appeals, relying on *People v. Johnson*, 987 P.2d 928 (Colo.App.1999), *rev'd*, 13 P.3d 309 (Colo. 2000), reversed the district court's order and remanded for resentencing. *People v. Young*, No. 98CA791, (Colo.App. Sept. 16, 1999) (not selected for publication).

The State subsequently filed a petition for rehearing, and the court of appeals ultimately concluded that any error in the advisement was harmless under *Craig v. People*, 986 P.2d 951 (Colo.1999), because the trial court's advisement to Young of the maximum available sentence of imprisonment was sufficient to include his DOC sentence and mandatory parole. *People v. Young*, No. 98CA791, (Colo.App. Dec. 16, 1999) (not selected for publication).

## II.

### A.

We deal in this case, as we have in a number of other recent cases, with the requirements for advisements of defendants entering pleas of guilty to pending criminal charges. The simple premise with which we must begin is that a defendant must understand the effect of his plea in order to be deemed to have entered such plea knowingly, voluntarily and intelligently.

Because of the nature of criminal proceedings, the responsibility for documenting on the record that level of understanding falls primarily on the trial court. Accordingly, Crim. P. 11 outlines the nature of the necessary advisement for a sufficient plea of guilty.

However, that simple premise quickly fractures into a series of questions and dilemmas, some of which we have addressed previously in our case law and others of which continue to arise. We here recite the principles that guide our resolution of these questions.

First, Colorado requires a mandatory period of parole for all class 2 through class 6 felony convictions involving a sentence to a term of imprisonment. § 18–1–105(a)(V)(A), 6 C.R.S. (2000). Mandatory parole is a direct and automatic consequence of a sentence to DOC, and during that period of parole, the defendant remains at risk of reincarceration.[1] Accordingly, it makes sense that to understand the "possible penalty or penalties" as required by Crim. P. 11, the court must advise the defendant of mandatory parole. *Benavidez v. People*, 986 P.2d 943, 950 (Colo. 1999).

Second, in determining whether or not a defendant received a proper Crim. P. 11 advisement, we look to whether the record

---

1. We dealt with the resentencing of a felony offender who is rejected after acceptance by a community corrections program in *People v. Johnson*, 13 P.3d 309 (Colo.2000). In *Johnson*, we held that the term "offender's sentence" in section 17–27–105(1)(e), 6 C.R.S. (2000), which permits a court to resentence a felony offender who is rejected from a community corrections program, refers only to the term of incarceration in DOC, not to mandatory parole. 13 P.3d at 314. Thus, a defendant originally sentenced to community corrections for five years can be resentenced to five years in DOC plus a mandatory period of parole without violating section 17–27–105(1)(e). *Id.* The *Johnson* opinion did not discuss the validity of the defendant's plea under Crim. P. 11. *Id.* at 312 n. 3.

as a whole shows that defendant received sufficient information as to be fairly placed on notice of the matter in question. *Benavidez*, 986 P.2d at 950. If the Crim. P. 11 advisement indicates an affirmative waiver by the defendant, then he has the burden to prove, by a preponderance of evidence, the ineffectiveness of his apparent waiver. *Craig*, 986 P.2d at 964.

■■ Third, if the advisement is infirm, then the court will determine whether it can correct the error. If the incarceration time to which the court sentenced defendant plus the period of mandatory parole fits within the range of the sentence that the trial court advised the defendant he was "at risk of receiving," then we deem the error harmless. Specifically, "the error is harmless if the prison sentence imposed and the mandatory parole term, combined, do not exceed the prison time the defendant was advised of and risked receiving." *Benavidez*, 986 P.2d at 948. The substituted prison sentence and the parole term, combined, cannot exceed the prison time the defendant was advised of and risked receiving. *Id.* If the error cannot be corrected, the defendant can withdraw his plea. *Craig*, 986 P.2d at 964.

Further, we have clarified that the interpretation and implementation of a plea agreement[2] between the People and the defendant is separate from the inquiry of whether the defendant has been properly advised of the possible consequences of his plea. The latter inquiry relates to the court's responsibility to assure that the defendant understands what the consequences of his plea could be.

■ More importantly, the Rules of Criminal Procedure clearly presume that a trial court is not bound by "any representations made to the defendant by anyone concerning the penalty to be imposed or the granting or the denial of probation, unless such representations are included in a formal plea agreement approved by the court and supported by the findings of the presentence report, if any." Crim. P. 11(b)(5). The Rule further amplifies that the judge in "every case should exercise an independent judgment in deciding whether to grant charge and sentence concessions." Crim. P. 11(f)(5). Accordingly, when we analyze the sufficiency of a providency hearing advisement, we do so with the clear understanding that the judge advises the defendant of the consequences to which the plea could subject him or her under the applicable statutes, *not* under the plea agreement, and that the judge makes no representations at the providency hearing that he or she will accept the plea agreement.

■■ The defendant retains the right to withdraw his plea at or before the sentencing hearing if the judge determines that he or she will not follow the charge or sentence concessions contemplated by the plea agreement. Crim. P. 32(d); *People v. Wright*, 38 Colo.App. 271, 274, 559 P.2d 249, 251 (1976). Whether the court's sentence does or does not comport with the agreement is a matter addressed to the sound discretion of the court. *People v. Chippewa*, 751 P.2d 607, 609 (Colo.1988).

Here, the original sentence stipulation was for a five year sentence to DOC. The defendant himself requested that the trial court convert his sentence to a sentence to community corrections, which the trial court did. Ultimately, the sentence reverted to a DOC sentence, because the defendant was not admitted to community corrections. The defendant does not allege that the trial court failed to follow the plea agreement. The defendant here never sought to withdraw his plea.

■ The trial court is not bound by the parties' plea agreement, and has an independent duty to examine the appropriate sentence prior to issuance of that sentence. Hence, the defendant is truly at risk of receiving any sentence permitted by the statutes for the crime to which he offers a plea of

2. *Benavidez v. People*, 986 P.2d 943 *passim*, dealt extensively with the construction of a plea agreement in the context of mandatory parole implications. To the extent that Young argues that the plea agreement itself failed to include a reference to mandatory parole and was, therefore, illegal, we disagree. In *Craig* and *Benavidez* we held that the reference in a plea agreement to a "sentence" stipulation refers to incarceration time at DOC and should not be read to omit mandatory parole. *Craig*, 986 P.2d at 961; *Benavidez*, 986 P.2d at 948.

guilty, subject always to his right to withdraw the plea at or prior to sentencing if the court diverges from the contemplated agreement. Accordingly, when we look at the record to determine what the defendant understood he "risked receiving" at the time he entered his plea, we look to the maximum statutory exposure recited by the court or included in the documentation.

An exception to that rule occurs when the trial court explicitly states at the providency hearing that it will accept and agree to be bound by the plea agreement, and so advises the defendant. In *Clark v. People*, 7 P.3d 163 (Colo.2000), we addressed just that situation. *Clark* involved a plea agreement in which the parties stipulated to a three year "cap" on the defendant's period of incarceration. 7 P.3d at 165. At the providency hearing, the trial judge advised the defendant of the maximum period of incarceration he could impose, but stated that, if he sentenced defendant "to the Department of Corrections, it will not exceed three years." *Id.* Accordingly, we determined that when a trial judge explicitly states that he will adhere to the plea agreement upon sentencing, "the stipulated maximum term of imprisonment supplants the statutory maximum term of imprisonment described by the trial court during the Crim. P. 11 advisement." *Id.* at 166.

### B.

With that background, we turn to the specific legal question posed by this case: namely, whether the record must show that a defendant who was sentenced to community corrections understood that a possible sentence to the DOC would carry a period of mandatory parole.

 We restate our two basic premises: first, that the record of a providency hearing must demonstrate that the defendant understood the "possible penalty or penalties" attendant upon his plea; and second, that any plea agreement between the People and the defendant does not bind the court and therefore does not circumscribe the penalties of which the defendant should be advised.

 Hence, although mandatory parole is clearly not an inevitable consequence of a sentence to probation or to community corrections, *People v. Birdsong*, 958 P.2d 1124, 1128 (Colo.1998); *Benavidez*, 986 P.2d at 950, the scope of the providency hearing must address mandatory parole just as it must address the possible sentence to DOC. The trial court implicitly reserves the right to impose a sentence to DOC based upon the plea of guilty, and that sentence would carry a period of mandatory parole. Thus, the trial court must so advise the defendant.

### III.

We now discuss the specific facts of this case and how they fit into the scheme we set out above. The initial advisement Young received in case No. 93CR969 was that he could be subject to a term of one to three years in DOC, plus two years of mandatory parole. Some eighteen months later, at the hearing at which Young pled guilty to attempted sale of a controlled substance in case No. 95CR95, the court advised Young that he could be subject to a sentence of from two to six years in prison, or up to twelve years under extreme aggravating circumstances. The court then sentenced him to five years in community corrections, which was converted into a DOC sentence when defendant became ineligible for community corrections.

Applying the principles we have developed, we first note that both in 1994 and in 1995, the parties tendered stipulated plea agreements; however, the trial court did not affirmatively agree to be bound by those stipulated sentences, and in fact, indicated to the contrary that it reserved the right to reject the agreement until sentencing.

 Hence, just as Young was entitled to be advised of the DOC sentence that his pleas could warrant, so, too, was he entitled to an advisement to the mandatory parole consequences of the plea. The 1994 advisement included a reference to mandatory parole, and the correct term of such parole. The 1995 advisement did not, and was therefore deficient.

Thus, we turn to whether the trial court committed harmless error, and we conclude that it did. The court advised Young that he risked receiving a sentence of twelve years to DOC. Ultimately, he received a sentence of five years, which carried a mandatory parole term of three years. The period of incarceration plus the term of mandatory parole fits within the range of sentence that the court advised Young he risked receiving, and therefore, Young suffered no prejudice.

## IV.

Consequently, we affirm the court of appeals decision in denying defendant's request for relief under Crim. P. 35(c).

Justice MARTINEZ dissents, and Justice BENDER joins in the dissent.

Justice MARTINEZ dissenting:

The majority holds that the trial court's failure to advise the defendant of the mandatory parole consequences of a sentence to incarceration was harmless error. In reaching this result, the majority reasons that, because the trial court advised the defendant that the offense to which he pleaded guilty, pursuant to a sentence stipulation, carried a maximum possible sentence of up to twelve years, a period of five years to the Department of Corrections (DOC) plus three years mandatory parole fit within the scope of that advisement. Maj. op. at 207–208. The majority also argues that, if a trial court has not explicitly accepted the stipulated sentence in a plea agreement, a providency advisement of statutory periods of incarceration sufficiently advises a defendant of the sentence he actually risked receiving by entering a guilty plea. I respectfully dissent.

In my view, the failure of the trial court here to advise the defendant of the periods of mandatory parole attendant upon his plea of guilty was not harmless error. The fact that the trial court never expressly gave the defendant the opportunity to withdraw his plea, nor advised the defendant that it would not accept the stipulation and that he could, therefore, withdraw his plea, indicates that the stipulation remained in effect. Further-

more, I do not believe that our holding in *Clark* is limited to those situations where a trial court explicitly states that it is accepting sentencing concessions in a plea bargain.

The trial court here, by sentencing the defendant to community corrections, accepted the stipulated sentence in the plea bargain. Therefore, the sentence the defendant was actually at risk of receiving, as calculated under our reasoning in *Clark*, was limited to the five-year stipulated sentence of which he was advised. Accordingly, I would conclude that the trial court's failure to advise the defendant of the mandatory parole period attendant upon his plea bargain to five years in DOC requires a modification of the defendant's sentence so as to render the error harmless.

## I.

Because the facts of this case are presented by the majority, maj. op. at 204–205, I will only recount a few relevant facts here. In a plea agreement between Young and the People, a sentence of five years in the DOC was stipulated. At the providency hearing, the trial court stated to Young that "the parties here have agreed that you would be sentenced to prison, if you do plead guilty, for five years. I don't have to accept that agreement and I say that because I will know more about the case and more about you at the sentence hearing." The trial court went on to advise Young that he could be sentenced within a range of two to six years, or, upon a finding of extreme aggravating circumstances, up to twelve years, but did not advise him of a mandatory parole period.

At sentencing, the trial court did not immediately impose the stipulated sentence of five years to DOC, but instead allowed Young to serve the five years in community corrections. While Young awaited entrance into community corrections, the People filed a motion stating that Young was no longer appropriate for community corrections, which the trial court granted. The trial court then resentenced Young to a five-year DOC sentence, including a three-year period of mandatory parole. Young later filed a Crim. P. 35(c) motion requesting that his five-year

DOC sentence be reduced because the trial court failed to advise him of the three-year period of mandatory parole when he pleaded guilty. The trial court denied that motion, and the court of appeals affirmed.

## II.

I begin with a discussion of the plea bargaining process and the varied requirements in that process. Pleas are generally governed by the rules in Crim. P. 11. Under Crim. P. 11(f), a district attorney may engage in plea discussions with a defendant if it appears that the effective administration of criminal justice will be served. Crim. P. 11(f)(1). A district attorney is authorized, under this rule, to make favorable recommendations to the sentencing court concerning the sentence to be imposed if a defendant enters a plea of guilty. Crim. P. 11(f)(2)(I). Not only may the trial judge not participate in the plea discussions, Crim. P. 11(f)(4), but the judge "in every case should exercise an independent judgment in deciding whether to grant charge and sentence concessions." Crim. P. 11(f)(5).

When advising a defendant at a providency hearing, the trial court must advise the defendant of the fact that it exercises independent judgment in deciding whether or not to grant the sentence concessions in a plea agreement, and that the court may therefore sentence the defendant differently from what is considered in the plea agreement. § 16-7-301(4)(a)(I), 6 C.R.S. (2000). The court must then go on to describe the possible penalties to which a defendant may be sentenced, including the statutory minimums and maximums for the class of crime committed and any attendant periods of mandatory parole. *See Craig v. People*, 986 P.2d 951, 957–59 (Colo.1999); *Benavidez v. People*, 986 p.2d 943, 947 (Colo.1999). Furthermore, the trial court must also advise the defendant of those mandatory periods of parole attendant upon the sentence stipulated in the plea agreement. *Craig*, 986 P.2d at 957–59; *Benavidez*, 986 P.2d at 947. Failure to advise about mandatory parole is error. *Craig*, 986 P.2d at 964.

We have held that the sentence stipulations or concessions made in a plea bargain are merely recommendations to the trial court under Rule Crim. P. 11(f)(2)(I). *People v. Wright*, 194 Colo. 448, 450, 573 P.2d 551, 553 (1978). Under Rule Crim. P. 32(d), at sentencing a judge is always obligated to advise a defendant that she has decided against accepting the "charge or sentence concessions contemplated by a plea agreement." In *Wright*, we noted that these "concessions" referred to the "recommendations" in rule 11(f), and we interpreted the language in this rule to mean that a defendant should be permitted to withdraw his plea where the trial court chooses not to follow the district attorney's recommendation. 194 Colo. at 450, 573 P.2d at 553. If the defendant were not given the opportunity to withdraw his plea, the fact that the plea had been entered pursuant to a plea bargain that had not been followed, even if that plea bargain stated that the only obligation was that the "prosecution recommend probation," would raise the specter of false inducement. *Id.*

Thus, the rule in Colorado with respect to plea agreements and their acceptance or rejection is as follows: (1) any sentence concessions or stipulations made pursuant to a plea bargain are recommendations to the court, *Wright*, 194 Colo. at 450, 573 P.2d at 553; (2) the court must advise the defendant that it is not bound by the recommendations made in the plea agreement, Crim. P. 11(b)(5); § 16-7-301(4)(a)(I); (3) if the court chooses not to accept the sentencing stipulations or concessions in the plea agreement at the time of sentencing, the court must explicitly advise the defendant that it has rejected the plea agreement, Crim. P. 32(d); and (4) having advised the defendant that it is rejecting the plea agreement, the court must call upon the defendant to either affirm or withdraw his guilty plea, Crim. P. 32(d). If the court fails to follow the above requirements, it is error, the remedy for which is the withdrawal of the guilty plea. *People v. Wright*, 38 Colo. App. 271, 273–75, 559 P.2d 249, 250–52 (1976), *aff'd*, 194 Colo. 448, 573 P.2d 551 (1978).

In this case, the trial court advised Young at the providency hearing that it was not bound by the sentence stipulations made in the plea agreement. This advisement in-

formed the defendant that the sentence stipulation was a recommendation and that the court was not bound by the recommendation.[1] The trial court also informed Young that, if, at the time of sentencing, it chose to reject the stipulated sentence, then Young would have the right to withdraw his guilty plea. While the majority seems to accept this advisement as sufficient to satisfy the requirement that a defendant be called upon to affirm or withdraw his plea of guilty, I cannot agree. At sentencing, the trial court never told Young that it was explicitly rejecting his plea agreement nor called upon him to either affirm or withdraw his plea. Rather, the court accepted the plea agreement and sentenced Young to five years in community corrections. The fact that the court did not advise Young that it was rejecting the stipulation, and call upon him to withdraw or affirm his plea, illustrates that the court intended to accept the recommendation and believed that a sentence of five years community corrections was consistent with the stipulation.

Although a sentence to community corrections, for some purposes, is equivalent to a sentence to DOC, see, e.g., Downing v. People, 895 P.2d 1046, 1049–50 (Colo.1995)("time served as a resident of a community corrections facility is considered equivalent to time served at the Department of Corrections for the purposes of sentencing"), a sentence to community corrections is not as severe as DOC. Wilson v. People, 747 P.2d 638, 639 (Colo.1987)(citing People ex rel. VanMeveren v. Dist. Court, 195 Colo. 34, 36, 575 P.2d 4, 6 (1978)). The purpose of community corrections is to provide sentencing judges with a broader range of alternatives, allowing both the diversion of offenders from correctional facilities and the reintegration of incarcerated offenders into society. People v. Wilhite, 817 P.2d 1017, 1019 (Colo.1991); § 17–27–101. Thus, by sentencing an offender to community corrections, a sentencing court diverts an offender from DOC to a less severe facility.

A court may sentence an offender directly to community corrections pursuant to section 17–27–105(1)(a), and if such offender is rejected from the community corrections program, a court may resentence him to DOC for a period of time that does not exceed the sentence originally imposed. §§ 17–27–105(1)(d)—(1)(e). An offender who is resentenced to DOC after he has already served time in community corrections is granted credit against DOC for the time served in community corrections. § 17–27–105(1)(j).

Because the trial court has authority to divert an offender from DOC to community corrections, a sentence to community corrections does not mean that a trial court has rejected a sentence stipulation to the DOC. Here, faced with a sentence stipulation of five years to DOC, the trial court chose to sentence Young to five years in community corrections, did not advise Young that it had rejected his plea agreement, and did not call upon Young to affirm or withdraw his plea. All of these factors together show that the trial court accepted the sentence stipulation in Young's plea agreement when it imposed the sentence upon him.

Having determined that the trial court accepted the plea agreement stipulation in this case, I now turn to the majority's treatment of our decision in Clark v. People, 7 P.3d 163 (Colo.2000).

### III.

In Clark, we held that, among other things, a trial court must determine whether a defendant has been properly advised of mandatory parole and its length. Id. at 166 (citing Craig v. People, 986 P.2d 951, 957–59 (Colo.1999), and Benavidez v. People, 986 P.2d 943, 947 (Colo.1999)). If the advisement about mandatory parole is improper, then a defendant must be given the opportunity to

---

1. Although a sentence recommendation to the court generally requires the court to permit the defendant to withdraw his plea if the court is not imposing a sentence consistent with the agreement, I do not intend to imply that an agreement cannot be reached in which the district attorney takes a position with respect to sentencing which does not have the effect of a recommendation as explained in Wright, 194 Colo. at 450, 573 P.2d at 553. In order to do so, the trial court must explicitly advise the defendant that he would not have an opportunity to withdraw his plea if the court chooses not to follow the district attorney's suggestion.

withdraw his plea, unless the error in the advisement is harmless or can be rendered harmless. *Clark*, 7 P.3d at 166. The error in the advisement is harmless if the length of the incarceration and the mandatory parole term, combined, falls within the range of penalties that the trial court advised the defendant he could receive as a result of his plea. *Id.*

In *Clark*, we were asked to determine whether a defendant who has agreed to plead guilty in return for a sentencing stipulation must be advised of (a) the stipulated sentence plus the attendant mandatory parole term, or (b) the statutorily mandated sentences possible if the trial court rejects the stipulated sentence. *Id.* We have held that a defendant must be given an advisement of the range of penalties that he is at risk of receiving. *Craig*, 986 P.2d at 964–65. Generally, the penalty the defendant is at risk of receiving is the statutory maximum penalty, including mandatory parole, for the class of felony committed. However, in the case of a sentence agreement, the maximum penalty is limited by the defendant's plea agreement, plus the attendant period of mandatory parole. *Clark*, 7 P.3d at 167–68.

We assessed, in *Clark*, the defendant's risk by combining the stipulated maximum term of imprisonment with any period of mandatory parole of which the defendant received advisement at the providency hearing. "For purposes of assessing the full range of penalties that the defendant risked receiving, the stipulated maximum term of imprisonment supplants the statutory term of imprisonment described by the trial court during the Crim. P. 11 advisement." *Id.* Thus, for purposes of determining whether the advisement given to Clark was sufficient, we concluded that the three-year stipulated term of imprisonment supplanted the six-year statutory maximum term of incarceration mentioned by the trial court in the advisement. *Id.* at 168. Accordingly, we held that Clark did not receive adequate advisement concerning the mandatory parole period attendant upon his stipulated sentence, and concluded that the trial court's error was not harmless. *Id.*

The majority's reasoning attempts to narrow our holding in *Clark* by suggesting that,

in that case, we determined that the stipulated maximum term of imprisonment supplants that statutory maximum term described by the court *only* when a trial judge *explicitly* states that he will adhere to the plea agreement upon sentencing in the providency hearing. *Id.* at 206–207. I do not believe that *Clark* should be interpreted so narrowly. Indeed, the reason a stipulated maximum term of imprisonment supplants the statutory maximum is precisely because the defendant may withdraw his plea if the court does not wish to follow the stipulation. Thus, the defendant is not actually at risk of receiving a sentence greater than the stipulation.

In *Clark*, the People and the defendant agreed to a stipulated sentence of a three-year "cap" on Clark's sentence to incarceration. This stipulation meant that Clark agreed that, by pleading guilty, he would serve three years *or less*. Thus, when the sentencing court sentenced Clark to a sentence within the range of the stipulation of his plea agreement, the court had accepted his plea agreement.

Because the court had accepted his plea agreement, and because Clark had been advised by the court that if his plea were accepted his DOC sentence would not exceed three years, *id.* at 165, Clark did not risk receiving a penalty greater than three years' imprisonment when he was sentenced and did not have the right to withdraw his plea. *See Craig*, 986 P.2d at 964 (if advisement is improper, defendant must be given opportunity to withdraw his plea). Thus, I believe that *Clark* stands for the proposition that, unless a trial court declines to accept the sentence stipulated to by the People and the defendant, and gives the defendant the opportunity to withdraw his plea, then the stipulated maximum term of imprisonment supplants that statutory maximum term described by the court in its Crim. P. 11 advisement. If the trial court clearly rejects the plea agreement's stipulations, and the defendant chooses not to withdraw his plea, then the statutory maximums of which it advises the defendant are sufficient to withstand the defendant's Crim. P. 35(c) motion.

In this case, the trial court told Young that, if it accepted the stipulated sentence in his plea agreement, he "would be sentenced to prison ... for five years." Maj. op. at 204. Under section 17–27–105(1)(b), 6 C.R.S. (2000), the trial court may impose a sentence to community corrections "which includes terms, lengths, and conditions pursuant to section 18–1–105, C.R.S." § 17–27–105(1)(b); *People v. Johnson,* 13 P.3d 309, 314 (Colo. 2000). Thus, under the community corrections statute, the trial court has the same discretion to fashion the terms and lengths of a community of corrections sentence as it has to sentence an offender to imprisonment or confinement in a DOC facility. § 17–27–105(1)(b); *Johnson,* 13 P.3d at 314; *see also* § 18–1–105(1)(a)(V) (setting minimum and maximum terms for sentences that a court may impose for different classes of felonies). It is reasonable to conclude, therefore, that the sentencing court has accepted a defendant's plea agreement when it imposes a sentence to community corrections equal in length to the stipulated sentence in that plea agreement.

The majority's narrowing of *Clark* here is contrary to the requirements in Crim. P. 32(d). There is nothing in that rule stating that a court must advise the defendant that it explicitly accepts the plea agreement. In fact, the rule is exactly the opposite; the only advisement that must be made is that the court has *rejected* the plea agreement. Crim. P. 32(d). Upon that advisement of rejection of the agreement, the defendant must then *explicitly* be given the opportunity to withdraw his plea. *Id.* No such advisement or opportunity was given here.

At sentencing in this case, the trial court sentenced Young to five years in community corrections. The defendant had requested that the trial court sentence him to community corrections instead of the DOC because he feared for his safety in DOC. He did not state, in that request, that he wished for the court to not accept his plea agreement. Instead, it appears that Young correctly believed that it was within the trial court's authority to choose, under the concession in his plea agreement, to sentence him to either community corrections or to DOC. Thus, having received the sentence he requested, Young had no opportunity to, incentive to, nor reasonable belief that he could, withdraw his plea in this case.

Young had already been advised of the sentence he would receive if the agreement were accepted, as well as the possible statutory sentences if the court chose not to accept the agreement. By failing to advise Young of the possibility of mandatory parole attendant upon a sentence to DOC, pursuant to his plea agreement, the court's error cannot be held to be harmless. *Clark,* 7 P.3d at 167–68. Under our reasoning in *Clark,* the five-year term of imprisonment here supplanted the statutory maximum term of incarceration for purposes of calculating the defendant's risk. Accordingly, the fact that the trial court advised Young that he could receive a sentence of up to twelve years makes no difference in the assessment of the error. *Id.*

Having concluded that the trial court erred in failing to advise Young of mandatory parole, I would modify Young's sentence so as to render that error harmless. *Craig,* 986 P.2d at 964. Here, the Crim P. 11 advisement given by the court was of a five-year period of incarceration. Because there was no mention of mandatory parole in that advisement, it is reasonable to hold that the full range of penalties that Young risked receiving by pleading guilty is equal to the maximum term specified in his plea agreement or in the Crim. P. 11 advisement. *Clark,* 7 P.3d at 168. Thus, because Young was advised of a five-year punishment, his sentence to DOC could be reduced to two years in DOC and a three-year period of mandatory parole, totaling a penalty period of five years total. *See* § 18–1–105(1)(a)(V) (outlining possible penalties and periods of mandatory parole). This total sentence would be equal to the risk of which Young was advised by the trial court, and could, therefore, render the failure to advise Young of mandatory parole harmless.

## IV.

We held in *Craig* and *Benavidez* that a trial court must advise a defendant of the mandatory periods of parole which would follow any period of incarceration received as

a result of a guilty plea. *Craig*, 986 P.2d at 957–59; *Benavidez*, 986 P.2d at 947–48. We further held, in *Clark*, that a trial court must not only advise a defendant of the punishment he risks receiving as a result of his plea of guilty, but that the risk of which he must be advised is of the period of incarceration agreed to in his plea agreement *plus* any attendant period of mandatory parole. 7 P.3d at 168–69. Finally, Crim. P. 32(d) states that a trial court must advise a defendant that it has decided to reject the stipulated sentence in his plea agreement, and must give the defendant an opportunity to withdraw his guilty plea.

If a trial court, upon rejection of a stipulated sentence in a plea agreement, fails to give a defendant both an explicit advisement that the plea agreement has been rejected and an opportunity to the defendant to withdraw his plea, that court commits error, the remedy for which is withdrawal of the plea. If the court's error, however, only lies in its failure to properly advise a defendant of the possible periods of mandatory parole attendant upon a sentence to DOC, even if that defendant is initially sentenced to community corrections or probation, such error may be rendered harmless if, by modifying the defendant's sentence so that his punishment does not exceed the risk of which he was advised, a legal sentence can be imposed.

The majority holds today that the trial court did not accept the defendant's plea agreement, and failed to advise the defendant of the attendant periods of mandatory parole. The majority ignores the fact that the trial court did not inform the defendant that it was rejecting the sentence concessions in his plea agreement nor give the defendant the opportunity to withdraw his plea, and instead concludes that the trial court committed merely harmless error in failing to advise the defendant of the attendant periods of mandatory parole. Furthermore, the majority limits our holding in *Clark* to the inverse of the requirement in Crim. P. 32(d), holding that, unless a trial judge explicitly *accepts* a plea agreement, then an advisement of the

statutory maximum penalties is sufficient. The majority therefore, affirms the court of appeals' decision upholding the trial court's denial of Young's Crim. P. 35(c) motion.

I believe that modification of Young's sentence to two years in DOC and three years of mandatory parole is necessary here to render the trial court's error harmless. The trial court's failure to advise Young of mandatory parole was error. Because Young's sentence to community corrections did not abrogate the stipulated sentence in his plea agreement, that sentence agreement continued in effect. Thus, as we acknowledged in our holding in *Clark*, because Young's perceived risk of punishment was limited to the five years of which he was advised at the providency hearing, his total sentence, including mandatory parole, could not exceed those five years. His sentence can be legally modified to render the trial court's error harmless by reducing his DOC sentence to two years and adding the three-year period of mandatory parole. Accordingly, I would reverse the decision of the court of appeals.

Justice BENDER joins in the dissent.